[L. A. No. 6199. In Bank.—March 21, 1921.]

JENNIE M. HODGE et al., Appellants, v. CORA McCALL et al., Respondents.

[1] PUBLIC LANDS—ERRONEOUS ISSUANCE OF PATENT — LEGAL MISTAKE OF DEPARTMENT OFFICIALS—TRUST.—If, through a mistake of law on the part of the officials of the Department of the Interior, a patent to land to which one person is entitled under the public land laws erroneously issues to another, the latter will be held by the courts to hold the legal title received from the government in trust for him who should have received it.

[2] ID.—FUNCTION OF DEPARTMENT REGULATIONS. — The function of Land Department regulations is to carry out the purpose of the statute for whose administration they are adopted, and they must be reasonable and appropriate for such purpose and cannot either enlarge or impair a right given by the statute.

[3] ID.—WHEN REGULATIONS VOID.—If the meaning of a statute relating to public lands be doubtful, the construction put upon it by the administrative officers should be given great weight by the courts in determining its true meaning, but if its meaning be not doubtful and the regulations are in conflict with that meaning, they are simply void.

[4] ID.—PURCHASE OF LOTS BETWEEN RESURVEYED GOVERNMENT SUBDIVISIONS — PREFERRED RIGHTS OF ABUTTING OWNERS — CONSTRUCTION OF ACT OF CONGRESS.—The act of Congress providing that any land owner or entryman whose land adjoined any lot should have a preferred right to purchase the one-half of the lot which abutted on his land (35 Stats. at Large, 779), must be given effect as far as possible, and the fact that it may not be possible to give it effect in one class of cases is no reason for not giving it effect in other cases where it is possible.

[5] ID.—LOTS ABUTTING UPON LANDS OF MORE THAN ONE OWNER.— Under such act, each land owner has the preferred right to purchase the one-half of any lot on his side which is in front of or abuts upon his land, and where a lot abuts on one side on the lands of more than one owner, each owner has the preferred right of purchase of the portion of such one-half which is in front of or abuts upon his land.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Conkling & Brown for Appellants.

Chas. L. Childers for Respondents.

OLNEY, J.—The original survey of the public lands in the Imperial Valley was exceedingly inaccurate, and when the valley came to be settled up another survey became necessary. This was made, and in its making the government subdivisions for which entry had been made were located as actually claimed by the entrymen on the ground. When so located, what theoretically should have been adjoining subdivisions were in many instances separated by small strips of land which did not come in either subdivision. The situation may be made clearer by the accompanying diagram of it as it exists in the present case.

The areas marked McCall and Hodge represent the governmental subdivisions upon which the plaintiff and the defendant, or their predecessors in interest, had respectively entered, and to which they had acquired title from the government. The strip between them, portions of which are marked 4 and 17, is one of the strips of which we are speaking. The strips were divided into subdivisions called lots, designated by numbers, and the numbers 4 and 17 are the numbers of the lots involved in the present controversy.

The strips were too narrow to be suitable for separate homesteads or farms, and could best be improved and used in connection with the homesteads and farms which they adjoined. To meet this condition of affairs, Congress passed an act (35 Stats. at Large, 779), providing for the sale of the lots into which the strips were subdivided, at a price and under regulations prescribed by the Secretary of the Interior, but with a proviso that any land owner or entryman whose land adjoined any lot should have a preferred right to purchase the one-half of the lot which abutted on his land. The proviso reads:

"Provided that any entryman or owner of such entered or patented tract shall have a preferred right to buy one-half of all such lots as abut on lands held under his entry or owned by him within six months after the time when the said Secretary shall fix the price of such tracts and this preferred right shall not prevent such entryman or owner from buying all of such abutting lots as may remain unsold at the expiration of said six months."

Pursuant to the act the Secretary of the Interior, through the commissioner of the land office, fixed the price at which the lots would be sold by the government and promulgated regulations for their sale. These regulations, however, instead of providing for a preferred right to each land owner to purchase one-half of any lot abutting upon his land, as the act prescribed, declared that literal compliance with the act in this particular was impossible and that preference would be given to those owners whose lands adjoined any particular lot who were best entitled to purchase under the special facts of each case. The regulations also provided that any land owner might claim a preferred right to purchase not merely a half but all of any lot which adjoined

his land, and that "if more than one application be made
for the same tract by parties separately claiming preference
of purchase, such right will be awarded to the applicant
most equitably entitled thereto under all the facts and cir-
cumstances of the particular case."

Following the promulgation of these regulations, the
plaintiff Jennie M. Hodge made application within the pre-
scribed six months to purchase as a preferred purchaser the
east half of lots 4 and 17 abutting on her land on the west,
and the defendant Cora M. McCall made a similar applica-
tion to purchase all of the same lots as abutting on her lands
on the east. The Land Department decided that the de-
fendant was more equitably entitled to purchase the lots
than the plaintiff, rejected the application of the latter,
and approved the application of the former for the whole
of the lots. Upon appeal to the Secretary of the Interior,
this ruling was affirmed and patent issued to the defendant
for the whole of the lots accordingly. Thereupon the
plaintiff brought the present action against the defendant,
alleging that upon the foregoing facts the plaintiff was
legally entitled to purchase the east half of the lots in
preference to the defendant, and that through mistake of
law on the part of the officials of the Interior Department
her right had been denied and a patent for the whole of
the lots issued to the defendant. The complaint asked for
judgment, declaring that the defendant held the east half
of the lots in trust for the plaintiff and directing that the
defendant convey it to her. Judgment went for the defend-
ant in the court below, and the plaintiff appeals.

[1] The rule is well established that if, through a mis-
take of law on the part of the officials of the Department of
the Interior, a patent to land to which one person is entitled
under the public land laws erroneously issues to another,
the latter will be held by the courts to hold the legal title
received from the government in trust for him who should
have received it. (*Sanders* v. *Dutcher*, 168 Cal. 353, [143
Pac. 599].) It is clear also that if there was any mistake
on the part of the department officials in rejecting the
application of the plaintiff, such mistake was a mistake of
law consisting in the belief of the officials that upon the
facts, which are not in dispute, she did not have a preferred
right to purchase. The question in the case therefore re-

solves itself into one as to whether or not the plaintiff had such preferred right.

This question must be determined by the statute and not by the regulations of the department. **[2]** It is the rule that the function of department regulations is to carry out the purpose of the statute for whose administration they are adopted, and that they must be reasonable and appropriate for this purpose and cannot either enlarge or impair a right given by the statute. (*United States* v. *United Verde Copper Co.*, 196 U. S. 207, [49 L. Ed. 449, 25 Sup. Ct. Rep. 222, see, also, Rose's U. S. Notes]; *United States* v. *George*, 228 U. S. 14, [57 L. Ed. 712, 33 Sup. Ct. Rep. 412]; *Anchor* v. *Howe*, 50 Fed. 366.) If the plaintiff in this case was given by the statute a preferred right to purchase, it is wholly immaterial that the regulations purport to deny her that right. The only bearing which the regulations can have on the question is in connection with the construction to be given the statute. **[3]** If its meaning be doubtful, then the construction put upon it in actual administration by the officers intrusted with that administration should be given great weight by the courts in determining its true meaning. But if its meaning be not doubtful, and the regulations are in conflict with that meaning, they are simply void. If this be not true, it is within the power of the department officials to override and annul an act of Congress.

**[4]** As to the meaning of the statute, we do not see how there can be any reasonable question. The proviso under which the plaintiff claims, to quote again the pertinent portion of it, reads: "Provided that any entryman or owner of such entered or patented tract shall have a preferred right to buy one-half of all such lots as abut on lands held under his entry or owned by him." This language seems perfectly plain, and the carrying of it out in connection with such lots as the lot 4 involved in this case would seem to present no difficulty whatever. The only difficulty in carrying it out would seem to arise in connection with such lots as lot 17 which abut on one side on the lands of more than one owner. If the statute be read with the utmost literalness, it would seem to give to each of such owners the right to purchase the whole of that half of the lot which is on their side of the center line dividing the lot longi-

tudinally. In other words, two men would seem to be given
the preferred right to purchase the same thing, a manifest
impossibility. But even if this difficulty exists in such cases,
that fact would not justify the annulment of the statute in
cases such as lot 4 where it does not exist. The statute
certainly must be given effect as far as possible, and the
fact that it may not be possible to give it effect in one class
of cases is no reason for not giving it effect in other
cases where it is possible. As to lot 4, then, we do not see
how there can be any serious question but that the plaintiff
had the preferred right to purchase, and, as a result, has
a right to the relief which she now seeks.

[5] It remains to consider the case as to lot 17. Here
there is the difficulty mentioned. That difficulty, however,
arises only by construing the statute with the utmost literal-
ness. But it should not be so construed. It should be
construed in the light of the situation which it was enacted
to meet and the purpose which it seeks to accomplish. So
construed, we have no doubt as to its meaning. The situa-
tion was one wherein lands which had come into private
ownership were separated by strips of public land too nar-
row to be desirable as separate holdings and which could
best be used and improved in connection with the holdings
on each side. The thing which the statute manifestly
sought to accomplish in this situation was to provide that
the strips should be divided equally between the land owners
on each side, provided they cared to purchase them. There
is no difficulty whatever in accomplishing this purpose. If
a lot extends beyond the boundary of one owner so as to
abut on the same side on the land of another, then each
of such owners should have the right to purchase the por-
tion of their half of the strip which abuts on his land. It
is perfectly plain that it was a division of the strips be-
tween the adjoining land owners in just this manner, in
case they desired to purchase, which the statute sought to
accomplish. The claimed impossibility of carrying out the
statute arises only from an ignoring of this purpose and a
construing of the statute with extreme literalness to provide
the absurd thing of giving to each of two or more parties
the preferred right to purchase the same land. This is
not, in our judgment, a rational construction of the statute.
It should be construed to mean that each land owner has

the preferred right to purchase the half of the strip on his side which is in front of or abuts upon his land. With the statute so construed, the plaintiff here had the preferred right to purchase, not all of the east half of lot 17, but that portion of it which abuts upon her land. As to that portion of lot 17, as well as to the east half of lot 4, she is entitled to the relief which she seeks.

The facts in the case all appear in findings, so that, while the judgment denying the plaintiff relief must be reversed, there is no necessity for a new trial.

Judgment reversed, with instructions to the lower court to enter judgment for the plaintiff in accordance with this opinion.

Shaw, J., Lennon, J., Sloane, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.