BISHOP, J.
Recently we were called upon to hold (People v. Ruddick, 107 Cal. App. (Supp.) 785 [1 Cal. Supp. 32, 288 Pac. 45]), that by the Wright Act the mere possession of intoxicating liquor fit for beverage purposes was made a public offense, except as possession was authorized by the act under certain circumstances. In the three cases now before us the defendants contend that their possession was authorized, each relying upon that portion of section 29, title 2, of the National Prohibition Act as adopted by the Wright Act, which reads as follows:
“The penalties provided in this act against the manufacture of liquor without a permit shall not apply to a person for manufacturing nonintoxicating cider and fruit juices exclusively for use in his home, but such cider and fruit *Supp. 760 juices shall not be sold or delivered except to persons having permits to manufacture vinegar.”
So far as we are aware, this provision has not received attention at the hands of any of the appellate courts of this state. It has been construed, however, in five federal cases, the first of which is United States v. Hill, (D. C. Md. 1924) 1 Fed. (2d) 954. The defendant was on trial, charged with the manufacture and possession of wine and cider. It was agreed that the manufacture was authorized by section 29 if the liquor was not intoxicating. It was not disputed that the liquor was intoxicating, tested by the definition contained in section 1, title 2, of the Volstead Act; but the defendant proposed to prove that it was not, in fact, intoxicating. Should evidence directed to this question be admitted ?
In support of its affirmative answer the court advanced these cogent reasons: “But it is obvious that by the concluding sentence of section 29 of the act, Congress intended that persons manufacturing nonintoxicating cider for use in their homes, and not for sale, should be in a class by themselves, at least in some particulars, otherwise the sentence has no meaning or use whatsoever. If it was intended to punish persons for manufacturing cider for use in their own homes, which contains more than one-half of 1 per cent of alcohol by volume, there was no necessity for the provision, for the act without the sentence already provided such punishment. If, on the other hand, it was intended by Congress that persons who made cider containing less than one-half of 1 per cent by volume should not be subject to punishment, there was no need for the provision, for the reason that the other provisions of the act did not provide punishment for such person. The only reasonable explanation for singling out home manufacturers of cider and fruit juices for special mention in this section, to my mind, is that Congress did not intend to subject them to the strict provisions as to the alcoholic content of the product specified in section 1, but intended to prohibit the manufacture of cider and fruit juices for home use, which should be, in fact, intoxicating. If the section is so interpreted, then there is a reason for its insertion in the act.”
The Circuit Court of Appeals, 4th Circuit, came to a like conclusion in Isner v. United States (1925), 8 Fed. (2d) 487. *Supp. 761 The defendant, charged with unlawfully possessing intoxicating liquor, had gathered a quantity of wild cherries and elderberries, had strained out the berries and added some water. The concoction was found in his cellar. At the trial he offered to show that the liquid was, in fact, not intoxicating, but an objection to this evidence was sustained. Upon the hearing on appeal the government stipulated that the wine was not, as a matter of fact, intoxicating, although it did contain more than one-half of 1 per cent of alcohol by volume. The court stated its conclusion in the following language:
“We therefore hold that in all such cases it is necessary to prove that such vinegar and fruit juices are in fact intoxicating before a conviction can be had.
“This view of this section is unanimously held by the court, and, as the writer of this opinion was a. member of the lower house of Congress when this act was passed, he can say without doubt that the foregoing construction of this section was the intent and meaning of Congress. This provision now under consideration was not a part of the bill as it passed the House of Representatives, but was inserted in the Senate after a number of speeches had been made by persons complaining that the 1 grandmother and housewife’ were going to be ‘penalized and made criminals’ if they made blackberry cordials or blackberry wines for use in their own home. In order to meet such objection on the part of such critics of the bill this provision was agreed upon and inserted in the Senate after a conference of members and senators deeply interested in the passage of the act and the success of prohibition. A different interpretation than this one placed upon the act would be to totally disregard the plain language of the Congress, which inserted this provision in the Volstead Act for the purpose of making a different rule for conviction of persons who make nonintoxicating vinegar and fruit juices exclusively for their home uses.”
Two contrary conclusions have appeared in reports of federal cases and should be noted. One of these, United States v. Picalas, (N. D., W. Va. 1928) 27 Fed. (2d) 366, was appealed and the judgment reversed on the authority of the Isner ease. (See Picalas v. United States, (C. C. A. 4, 1929) 33 Fed. (2d) 1022.)
*Supp. 762 The remaining federal case (In re Baldi, (E. D., N. Y. 1929) 33 Fed. (2d) 973), arose from a petition for the return of twenty-six barrels of wine, unlawfully seized. Section 29 was relied upon as authorizing the possession, and therefore the return of the liquor which had been taken. The court held that the possession was not authorized under the section because the wine was intoxicating and because the great quantity involved demonstrated that it was possessed for commercial purposes and not for family use. As the wine was shown to contain 13.13 per cent of alcohol by volume, it was plainly intoxicating in fact, but the court relied rather on the definition, not being satisfied to interpret section 29 as using the word “intoxicating” in a sense different from section 1. No attempt was made to explain the purpose to be served by the provision in section 29 if so interpreted, and we are constrained to follow the reasoning of the other federal cases.
We conclude, therefore, that the last sentence of section 29 is one of the exceptions referred to in section 3, title 2, of the Volstead Act, and that a person does not offend under the act who manufactures and, after manufacturing, possesses exclusively for use in his own home, cider and fruit juices which are, in fact, nonintoxicating.
The evidence in the case against Sinicrope is not sufficient to sustain the judgment when tested by the conclusion just expressed. From the state’s case it appeared that the liquor in the possession of the defendant was wine or “what might be called grape juice or fruit juice”. The evidence given on behalf of the defendant stands uncontradieted that some three weeks prior to his arrest he had purchased a quantity of grapes, crushed the grapes in his back yard and poured the juice into the barrels where it was found. Nothing was added to the grape juice and it was, in fact, nonintoxicating. It was used only by himself and his family, consisting of eight persons. In the premises the judgment against the defendant Sinicrope must be reversed, the cause remanded for a new trial.
In People v. Patalano the prosecution established that the defendant had in his possession some five barrels of wine. Defendant endeavored to prove that his possession was legal because within the provisions of section 29 of the Volstead Act, which we have considered. His testimony was *Supp. 763 that he had purchased some grapes and crushed them and placed the grape juice in these barrels. All attempts to introduce evidence to determine whether the resulting liquid was, in fact, intoxicating or not were defeated by the rulings of the court. In view of the exception made by section 29, this ruling was incorrect, and the judgment is reversed, the cause remanded for a new trial.
In People v. Stoddard we have presented a somewhat different situation. A prima facie case of unlawful possession was established beyond doubt. By way of an endeavor to bring himself within the shelter of section 29, the defendant proved that the liquor he was charged with possessing was made by the process of adding water to a thick jelly-like syrup obtained in the market, the syrup being concentrated grape juice.
We are of the opinion that the attempted defense fails. The defendant cannot say the liquor he possessed was fruit juice which he manufactured. If he has manufactured any product, he has done so by operating on a product manufactured by someone else. The raw article, fruit, from which fruit juices may be manufactured was never in his hands. If any fruit juice was manufactured, it was done, not by him, but by those who made the grape juice, which, in turn, was concentrated to make the syrup bought by the defendant in the market. We are convinced that the exception here made to the general rule that no person shall manufacture or possess liquor containing more than one-half of 1 per cent of alcohol by volume is limited to those who themselves take the steps whereby cider or fruit juice is obtained from the fruit, and does not include those who make use of fruit juice preparations manufactured by someone else.
It follows that the judgment in the case of People v. Stoddard should be affirmed.
McLucas, P. J., and Shaw, 3"., concurred.
In the case of People v. Stoddard (Cr. A. No. 279) a petition for a rehearing was denied on April 9, 1930, and the following opinion then rendered thereon:
THE COURT.
A petition by defendant for a rehearing and an extensive brief in support thereof by amici curiae *Supp. 764 have been filed and we have considered them, but we find therein no reason to change the conclusion stated in our opinion previously filed in this case. A great part of the petition and brief are devoted to the citation and discussion of authorities in support of the proposition that the word “manufacture” includes “the process by which a new product is made by combining materials which in themselves are the finished product of some other manufacturer”. We have no quarrel with this proposition or the authorities by which it is supported. We do not hold, as suggested in the brief, that in every ease “one who by his own effort produces an article or commodity cannot be deemed to be a manufacturer thereof unless in its production he uses only raw materials”, if—as the brief apparently means, but does not say—the term “raw materials” is defined to mean materials in the state in which nature produces them; nor does our decision depend upon any construction of the term “manufacture” so as to exclude defendant’s operation therefrom. We do hold, however, that in the particular case of grape juice the raw material from which it is produced is necessarily the grapes, for reasons which we will presently state.
It is declared in the brief that “to be a manufacturer of grape juice . . . one . . '. may use . . . grape juice which has been prepared by another”, but no explanation is given of how this may be accomplished. We think the same grape juice can be manufactured but once and any further processes to which it may be subjected, although they be of a manufacturing nature, cannot constitute the manufacture of grape juice. A reference to the definition of the word “juice” is helpful to an understanding of the statute. That word is defined as follows: “The extractable fluid contents of plant cells or plant structures consisting of water holding sugar or other substances in solution.” (Webster’s Dictionary.) “The fluid part of animal or vegetable matter; especially the expressible watery matter in fruits, containing usually the characteristic flavor.” (Standard Dictionary.) “The juice of vegetables or fruit is nothing but the sap obtained by expression. If the sap is subjected to heat and evaporation the article thus produced is generally understood to be a different thing from the sap.” (Per Taft, J., in Smith v. Rheinstrom, (C. C. A. 6, 1895) 65 Fed. *Supp. 765 984.) It follows from these definitions, and is in effect held in the case just cited, that the syrup or “concentrated grape juice” which defendant testified he bought and used in his operations was not grape juice. Undoubtedly it had at one time been grape juice, before it passed through the manufacturing process by which it was reduced to the “thick jellylike syrup” which defendant described, but it does not follow that it again became grape juice by the addition of water, and we cannot hold that it did, for two reasons. In the first place, the defendant, on whom was the burden of proof, made no showing that the fluid resulting from the addition of water to this syrup was the same either chemically or physically as the original grape juice; and we very much doubt if it was, in view of the results obtained in other processes of concentration and dilution, instances of which are canned or dried milk. In the second place, if it were possible by any sort of synthetic process to make a fluid identical with the juice extracted from grapes, it would not be grape juice by any of the foregoing definitions. It is an essential part of all of them that the fluid to be termed “juice” shall have been extracted or pressed from the fruit. This is not true of the fluid produced by the defendant. Some part of it had been so extracted, but not the added water which constituted four-fifths of its bulb. Section 29 of the Volstead Act does not in terms except liquids equivalent to or identical with fruit juice and we can see no reason to suppose anything of the kind was intended. In fact, a general consideration of the purpose of the act and of the exception leads us to a contrary conclusion. The general purpose of the act is to suppress the use of intoxicating liquors for beverage purposes, and as incidental to that it was deemed necessary to define intoxicating liquors as including all those liquors which contain more than one-half of 1 per cent of alcohol, to prohibit all manner of dealings with such liquors whether for beverage purposes or not, with a few exceptions, and to surround the exceptions which might lead to any commercial exploitation with safeguards in the way of permits and regulations. No such safeguards were thrown around the manufacture of fruit juices under section 29. The purpose of that exception as stated in Isner v. United States, (C. C. A. 4, 1925) 8 Fed. (2d) 487, was to prevent the grandmother and housewife from being *Supp. 766 penalized and made criminals if they made the excepted liquors for use in their own homes. It is evident to us that it was not intended thereby to open a path to any sort of commercial dealing, which with the profit urge continually back of it would be likely to lead to abuse of the privilege. If defendant’s operation is permitted by law, no doubt manufacturing interests will arise to advertise and exploit the use of this grape syrup for the manufacture of so-called “grape juice”. This would result in a situation quite different from that which would appear if the grandmothers and housewives, and the householders, who are also within the exception, were under the necessity of procuring the fruit and extracting the juice therefrom. Fruit juice may by fermentation be made intoxicating in fact, and the statute provides no means of checking up on the process or of discovering who are engaged in it, as it does in the case of all other permitted manufacturing operations. Congress may well have deemed such a condition harmless in case of the comparatively few persons who would go to the trouble of obtaining fruit and extracting the juice therefrom; but have thought that if anyone might merely buy fruit syrup and add water to it, the simplicity of the operation and the influence of advertising and sales pressure by the manufacturers of the syrups would increase the practice to such an extent as to aggravate greatly the difficulty of enforcing the law. We think that section 29 of the Volstead Act sanci tions nothing of that kind, and that the term “fruit juices” is there used in the sense of the dictionary definitions so as to include only the fluid actually extracted from fruit. On account of this limited meaning of the term, the only raw material from which fruit juice can be manufactured is of necessity the fruit itself, although, as already stated, it is not generally true that manufacturing can be carried on only with materials provided by nature. The fluid which the defendant manufactured and possessed was, therefore, not fruit juice and he was not protected in his possession of it by section 29 of the Volstead Act.
It is. claimed that the conclusion thus stated is contrary to the decision in United States v. Hill, (D. C. Md. 1924) 1 Fed. (2d) 954. On a careful reading of that case we find that this question was neither presented to nor considered by the court. The fact that the defendant had manufactured *Supp. 767 the liquor found in his possession was declared by the court to be undisputed and conceded, but the nature of the manufacturing operation does not appear from the report.
Our attention is also called to an instruction of August 6, 1929, addressed by the United States prohibition commissioner to his agents, directing them not to interfere with the use of grape concentrates in the home for the manufacture of fruit juices, and it is contended that this is a regulation having the force of law. We are here dealing with a law of the state of California, regarding which the prohibition commissioner, who is an officer of the United States, can have no authority to make regulations. Our statute, the Wright Act, has adopted only the penal provisions of the Volstead Act, not the regulations which United States officers may adopt by way of interpretation or enforcement of that act. Moreover, such departmental construction of the statute cannot alter the plain meaning of the statute, but is of value only where its meaning is doubtful. (Hodge v. McCall, 185 Cal. 330, 334 [197 Pac. 86].),
The petition for a rehearing is denied. .