In re SEARCH WARRANT AFFECTING NO. 277 FIFTH AVE. IN BOROUGH OF MANHATTAN, CITY OF NEW YORK.
Application of SHENK et al.

District Court, S. D. New York.
Jan. 5, 1932.

Harry Saks Hechheimer, of New York City (David P. Siegel, of New York City, of counsel; Milton B. Seasonwein, of New York City, on the brief), for the motion.

George Z. Medalie, U. S. Atty., of New York City (David Marcus, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), opposed.

WOOLSEY, District Judge.

This motion is in all respects denied.

I. My authority to entertain this motion is to be found in Re 191 Front Street, Borough of Manhattan, City of New York (Kirvin v. United States), 5 F.(2d) 282 (C. C. A. 2); United States v. Casino, 286 F. 976, 980, 981 (D. C., S. D. N. Y.). Cf. also United States v. Madden (D. C.) 297 F. 679, 680.

II. This search warrant proceeding was based on an alleged violation of section 18 of title 2 of the National Prohibition Act,

title 27, U. S. Code, § 30 (27 USCA § 30), which reads as follows: "It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction, or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

The authority for the search warrant is to be found in section 25 of title 2 of the National Prohibition Act, title 27, U. S. Code, § 39 (27 USCA § 39), which reads as follows: "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in Title XI of public law numbered 24 of the Sixty-fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order. ✱ ✱ ✱ "

■ The offense, which is denounced in these two quotations and which is the background of the issuance of this search warrant, is a misdemeanor, and not a felony, because the punishment therefor prescribed by title 27, U. S. C., § 46 (27 USCA § 46), is a fine, or imprisonment for less than a year and a day.

■ In spite of the fact that a misdemeanor only is here involved, a search warrant is justifiable under the provisions of section 25 of title 2 of the National Prohibition Act. Rose v. United States, 274 F. 245 (C. C. A. 6); United States v. Friedman (D. C.) 267 F. 856.

III. When we consider the motion on the facts, it must be remembered:

■ First, that a search warrant of this kind is in effect a process for the seizure of liquor or property claimed to be forfeitable under the National Prohibition Act, and one of the methods by which the court secures possession of such liquor or property in order to file a libel for forfeiture thereof under said act. United States v. Franzione, 52 App. D. C. 307, 286 F. 769, and,

■ Second, that whether the property seized is or is not forfeitable is for later determination on a libel for forfeiture. Dumbra v. United States, 268 U. S. 435, 437, 441, 45 S. Ct. 546, 69 L. Ed. 1032.

Therefore, the question before me now is merely whether the situation shown by the affidavits on which the search warrant was issued was sufficient to show probable cause to believe that the Prohibition Law was being violated in the premises of which a search was sought, and, hence, whether the property there seized was seized under a valid process.

IV. The search warrant was granted on the affidavits of George A. Markham and Michael Reardon, Prohibition Agents, and of George W. Romig, a United States chemist assigned to the United States Bureau of Alcohol for this district.

Markham's affidavit sets forth the story in full. The affidavit of Reardon, who was with him at the time, is in all respects confirmatory thereof.

Markham says in his affidavit:

"On August 3, 1931, about 1.30 P. M., I entered premises known as 277 Fifth Avenue, Borough of Manhattan, City and State of New York. Said premises consists of a store on the ground floor of a 5 or more story brick office building and said store is occupied by a corporation known as the Vino Sano Co., Inc., and over the door at the entrance to the store is the number 277. I saw signs in the windows of said store reading Vino Sano Distributors, Inc. I entered the store and was referred to a man about 5 feet 6 inches tall, 35 years old, weighing about 140 pounds, with a fair complexion, brown hair. The interior of the store was arranged with counters and shelves, a cash register, a stock of Vino Sano Grape Bricks and a display of empty cartons used for advertising purposes. The stock consists of bricks of grape concentrate and is advertised to produce the following flavors. Port, sherry, tokay, orange, lemon (sweet types); champagne, burgundy, muscatel, rhine (dry types).

"I picked up an empty carton with the name Vino Sano Grape Brick thereon and the above mentioned man came to where I was standing and said, 'What can I do for you?' I held the carton toward him and asked him saying, 'Is it true that a person can make good wine from this preparation? He answered, 'Absolutely.' I then said, 'How do you do it?' He said, 'What flavor do you want?' I said, 'What flavors have you?' He handed me a circular and showed me the list of flavors that could be made. I underscored Muscatel and said 'That is the

kind I want to make. I am not interested in grape juice. What I want is a good wine with a kick to it.' He replied, 'Well, here is what you want. And to make good wine with a kick to it, take a package that costs $2.00; also take a package of anti-acid, a cork and rubber hose or tube.' He put the brick with the Muscatel flavor, a package of anti-acid, a cork and a rubber tube together and wrapped up the above mentioned articles in a paper and gave it to me, saying, 'Here is the outfit. All that is necessary to make good muscatel as good as any you ever tasted. Get a glass jug, gallon size, one that this cork will fit. Pulverize the brick and put it in the clean jug. Then fill the jug nearly full of water that has been boiled. Then take the anti-acid tablet and dissolve about one third of it in the liquid. This will help fermentation and keep your wine from turning to vinegar. For the gallon of wine, you must use about a pound of sugar, granulated is the best. Put your cork firmly in the neck of the bottle and put the free end of the hose in a can of clear water. This is to keep your product from absorbing gases from the air and will prevent the gases from escaping. After about five days, the liquid will ferment until your wine is as strong as you want it. It will develop as high an alcoholic content as you want and you will have wine after four weeks as good as you ever tasted. Some let it stand as long as six weeks but it gets almost too strong by then.' The man then gave me a circular with information and instructions as to how the wine was made. Said circular is attached hereto and made part hereof.

"When this information was being given me, Agent Michael Reardon, who followed me into the above described store, stood next to me and he received similar instructions for the making of wine from a young woman clerk in said premises. While the man gave me the instructions for the making of wine, Agent Reardon listened to him and heard him telling me how to make the wine. Agent Reardon purchased a grape brick together with the package of anti-acid, a cork and rubber tube, and I heard him say, 'You just follow the instructions that were given to that gentleman there,' indicating me.

"I gave the man that I purchased the equipment from $2.50 and he gave the money to a middle-aged woman, acting as cashier, and she rang up $2.35 on the cash register, put the money in the drawer thereof, and returned $.15 change to me, and stated to me in the hearing of the manager, 'There was a man in here some time ago who has been in the liquor business and he followed our directions and he said he had made as good wine as he had ever tasted.'

"The man that waited on me and who appeared to be the manager, stated that, 'We sell this in quantities so that it can be made by the barrel, but we give a big reduction in prices for such sales.'

"I told him, 'I will try out the brick according to your directions.' He replied, 'If you do, I'll guarantee that you will have a wine with all the kick you want. This is better than any other preparation for making real wine with plenty of kick to it. It is a knock-out.'

"As I was leaving the above premises, an elderly woman asked the manager if the preparation would make wine or just grape juice. He said, 'It depends on what you want to make.' She then said, 'I do not care for grape juice; I want good wine.' He stated that the bricks would make good wine. I called his attention to the paragraph in the heading 'To prevent fermentation, add $\frac{1}{10}\%$ of Benzoate of Soda.' He said, 'That is put in there to keep within the law. If you want good wine, pay no attention to that.'

"On August 4, 1931, I delivered the above purchase of Muscatel flavored brick, the anti-acid package, the cork and rubber tube together with the circular containing the information and instructions for the making of wine to George W. Romig, the United States Chemist and also advised him at the same time of the instructions given me orally for the making of good wine."

Reardon purchased a brick of a port flavoring and also delivered his purchase to the chemist Romig.

Romig, whose affidavit described the submission of the purchased articles to him, says: "I have examined the two grape bricks, above mentioned, and have removed a portion from the cartons and added water thereto. The liquid resulting was a grape juice with a high sugar content. The brick itself is a grape concentrate with considerable sugar and with the addition of water, as stated in the instructions, the liquid, in my opinion, will ferment and develop into a wine like palatable beverage, containing more than one-half of one per cent of alcohol by volume and be fit for use for beverage purposes."

The oblong carton in which the wine flavor bricks were inclosed is of a shiny yel-

low cardboard, and on the top of that submitted to me is the following:

### "CALIFORNIA
### "BURGUNDY FLAVOR
### "BRICK

"a flavoring compound for juices, syrups, candies, ice creams, sherberts, pies and puddings

"Manufactured by VINO SANO CO., INC., San Francisco, California.

"Net weight, 1 lb. 6 ozs."

At the two ends of the carton are the words:

### "CALIFORNIA
### "WINE
### "FLAVOR BRICK"

On the front surface of the carton is the following:

"THE FLAVOR BRICK is produced for the following Flavor Types: Port, Sherry, Malaga, Tokay, Orange (sweet types) Champagne, Burgundy, Muscatel, Rhine, Claret (dry types)

"The Brick is chiefly composed of: CALIFORNIA GRAPE CONCENTRATE, Grape Extract, Grape Acids (tartaric and tannin), Grape glucose and cerelose, pectins, mineral salts, lime, potash, soda, phosphorus, sulphur, iron, and all the known and unknown Vitamines supposed to be in Grapes. No harmful, synthetic substances, chemicals or preservatives, not allowed by the provisions of the U. S. Pure Food Laws, are used.

"TO PRODUCE WINE FLAVOR IN FRUIT JUICES add one Flavor Brick to from one to five gallons of any kind of Cider, Fruit or Berry Juice."

On the back surface of the carton is the following:

"MANUFACTURERS, CLERGYMEN and RABBIS who have government permits to manufacture and dispense SACRAMENTAL, PORT OR SHERRY WINES may use these bricks for their legitimate purposes THE LEGALITY of these Bricks has been established twice and tested in the Federal Court in San Francisco. Section 29 of the Volstead Act provides: 'The penalties in this Act shall not apply to a person for manufacturing non-intoxicating cider and fruit juices for home use, unless proven to be 'INTOXICATING IN FACT.'

"Section 33 of the same Act makes the possession of 'Liquor' in a private home legal, if such liquor was lawfully acquired. Fruit-juices which fermented in a home under section 29 and after they have been brought to a home, are lawfully acquired."

On the bottom surface of the carton the following was printed:

"DIRECTIONS to make a palatable, pleasant NON-ALCOHOLIC BEVERAGE

"Dissolve one brick in one gallon of plain water.

"Treat this exactly as you would treat freshly pressed fruit juices for home use.

"Sugar may be added according to taste, usually ONE pound for the DRY TYPES; TWO pounds for the SWEET TYPES. This beverage should be consumed within five days, otherwise and in summer temperature, it might ferment and become wine.

"TO PREVENT FERMENTATION ADD ⅒% BENZOATE OF SODA.

"Because YEAST GERMS are everywhere in the air, also MOULD and VINEGAR GERMS. PROTECT ANY KIND OF FRUIT JUICE AGAINST MOULDING and SOURING by using the VINO SANO WATER SEAL.

"FOR ADDITIONAL PROTECTION and to speed up the settling and clearing of juice, use one small package VINO SANO 'ANTI-SOUR'

"After liquid is clear and settled, draw off from sediment (filter), and syphon into bottles. Twenty-four hours afterwards, cork the bottles and store in cool place until used; put date and label."

The contention of the defendants, apparently, is that these wine flavor bricks may be used for making unfermented grape juice, as well as for the other and more potent purposes implied in these advertisements, and they fall back, for their justification of the sales thereof, on the ironic instruction above quoted: "To prevent fermentation add ⅒% Benzoate of soda."

V. After the seizure of the wine flavor bricks at 277 Fifth avenue, the Vino Sano Distributors, Inc., and certain individuals applied before the commissioner to quash the search warrant.

The commissioner had a full hearing on oral evidence on the subject of probable cause. At this hearing before the commissioner, Markham, the prohibition officer who made the leading affidavit, was called in support of the warrant and orally examined, and the affidavits used to secure the warrant were marked in evidence. Representatives of the Vino Sano Distributors, Inc., who were allowed to testify, controverted some of the

statements made on behalf of the government by Markham in his oral evidence, and by the other affiants in their affidavits, and the commissioner also heard considerable evidence involving consideration of the legality of the wine bricks, which should properly come up in a forfeiture libel.

The commissioner, as he had a perfect right to do, apparently either did not believe, or regarded as irrelevant, the evidence adduced on behalf of the applicants seeking to vacate the warrant, and denied the motion to quash it, saying: "It is not necessary to the determination of this motion to pass upon the question whether the sale of said grape bricks unaccompanied by collateral conversation was unlawful. It is sufficient that upon all the facts probable cause to believe that the law was being violated has been shown."

VI. I entirely agree with the commissioner, for since the decision in Danovitz v. United States, 281 U. S. 389, 50 S. Ct. 344, 74 L. Ed. 923, it is clear that the affidavits on which the search warrant was granted showed probable cause to believe that section 18 of title 2 of the Prohibition Act was being violated. Cf. also United States v. Albert R. Burnett & Ukiah Grape Products Co., 53 F.(2d) 219, decided October 16, 1931, in the Western District of Missouri.

VII. Cases relied on to support the motion before me, such, for example, as Young's Rubber Co., Inc., v. C. I. Lee & Co., Inc., 45 F.(2d) 103 (C. C. A. 2), and United States v. 301 Cans of Acme Malt Extract (D. C.) 28 F.(2d) 213, will be appropriate for citation and consideration if and when a libel for the forfeiture of the wine bricks seized under this search warrant comes to be tried; but they are not persuasive on the only issue here involved, which is as to whether there was probable cause for the issuance of the warrant.

VIII. The affidavits show the seller's criminal intent sufficiently for the purpose of the issuance of a search warrant and the situation here involved, therefore, does not come within the principle of the decision of the Circuit Court of Appeals for this circuit in United States v. Nomel Products Co. et al., 47 F.(2d) 575, which was cited by the moving party, but instead comes directly within the rule laid down by the Supreme Court in Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032. In this connection, see also Hammerle v. United States, 6 F.(2d) 144 (C. C. A. 6).

For when, as here, the evidence shows that the part of the process of wine making which involves the most manual labor has already been performed, and that all that still remains to be done is to leave the product, properly diluted, alone with nature, it does not seem to me conceivable that it can reasonably be contended that what was here sold —accompanied by the instructions here shown—was not a preparation, compound, or substance designed or intended for use in the unlawful manufacture of intoxicating liquor and hence not legally saleable. Cf. People v. Stoddard, 288 P. 61, 63, and on rehearing 63–65 (California Appellate—Los Angeles County).

Settle order in accordance with this opinion on two days' notice.