[Civ. No. 2330. Fourth Appellate District.—September 11, 1939.]

W. S. MONTGOMERY et al., Plaintiffs and Appellants, v. BOARD OF ADMINISTRATION OF THE "CITY EMPLOYEES' RETIREMENT SYSTEM OF SAN DIEGO" et al., Respondents; ANNA MAUDE KENNEDY, Intervener and Appellant.

Ray D. Johnson and John H. Langston for Appellants.

Dayton L. Ault, City Attorney, and James J. Breckenridge, Deputy City Attorney, for Respondents.

MARKS, J.—This is an action to compel respondents to pay appellants certain employees' pension or retirement benefits claimed to have accrued under the provisions of the charter and ordinances of the city of San Diego. The trial court held that none of the appellants were entitled to receive pensions and this appeal followed.

A. R. Kennedy was retired on November 1, 1935, and received his pension up to the date of his death. His widow, Anna Maude Kennedy, succeeded to his pension rights. Except where clarity requires, we will make no distinction between deceased and his widow, the intervener.

The first charter of the city of San Diego (Stats. 1889, p. 643, amended Stats. 1925, p. 1351) provided for a retirement plan for certain employees of the city. These provisions were reenacted in the present charter (Stats. 1931, p. 2838) without any substantial change affecting the rights of the parties before us. We will, therefore, not concern ourselves with the older charter provisions and all references will be to the present charter.

Article nine of the present charter contains the following provisions:

"Section 141. City Employees' Retirement System. The Council of The City of San Diego, State of California, is hereby authorized and empowered by ordinance to establish

a retirement system and to provide for death benefits for public employees other than policemen and firemen (who are now members of a pension system) and elective officers, and members of Commissions who serve without pay; provided, however, that in no retirement system so established shall an employee be retired—except in case of disability, incapacitating the employee for the performance of his duties—before he reaches the age of sixty-two and before ten years of continuous service; . . . Retirement shall be compulsory at the age of seventy-two.''

''Section 144. Board of Administration. The system shall be managed by a Board of Administration which is hereby created, . . .

''The Board of Administration may establish such rules and regulations as it may deem proper; . . .

''The Board of Administration shall be the sole authority and judge under such general ordinances as may be adopted by the Council as to the conditions under which persons may be admitted to benefits of any sort under the retirement system; and shall have exclusive control of the administration and investment of such fund or funds as may be established, . . . Provided, however, that the Auditor and Comptroller shall refuse to allow any warrant drawn for payment of a retirement allowance if, in the opinion of the Auditor and Comptroller such retirement allowance has been granted in contravention of this Article or any ordinance passed under the authority granted herein.''

''Section 146. Additional Provisions. The council is hereby fully empowered by a majority vote of the members to enact any and all ordinances necessary, in addition to the ordinance authorized in Section 141 of this Article, to carry into effect the provisions of this Article; and any and all ordinances so enacted shall have equal force and effect with this Article and shall be construed to be a part hereof as fully as if drawn herein.''

In 1927, the city council of San Diego adopted ordinances setting up its retirement system. These ordinances attempted to provide for credits to employees for employment that had been intermittent and not continuous. It provided for the issuance of certificates to employees for the total of such intermittent periods of employment which should be

credited on the total of ten years' continuous employment required in the charter as a prerequisite to retirement.

For a number of years the retirement system was administered under the terms of the ordinances. Those employees who had ten years' service, even though part of it was intermittent, were retired and received their pensions. In 1938, this procedure was questioned and the Board of Administration of the City Employees' Retirement System suspended payments to those pensioners who did not have ten years' continuous service to their credit.

An action in declaratory relief was brought by a pensioner, presumably on behalf of all other pensioners, setting forth the controversy that had arisen and asking the Superior Court of San Diego County to determine and declare the rights of the pensioners under the charter and the ordinances. The superior court declared those provisions of the ordinances void that attempted to give employees credit for intermittent service and held that only those who had ten years' continuous service to their credit could receive pensions. No appeal was taken from this judgment. Appellants have set forth portions of this judgment in their brief. It contains the following:

"That the words 'continuous service' in the Charter of the City of San Diego, in its relation to the retirement of members of the City Employees' Retirement System of the City of San Diego, means ten consecutive years of service without break, cessation or intervening period of time, save and except such breaks or interruptions as may be caused by legally authorized vacations or leaves of absence within the power of the City to grant."

Appellants in their reply brief state that the quoted portion of the judgment in the declaratory relief action defining continuous service is a reasonable definition of the term. We agree with that admission. Appellants admit that their records of service to San Diego do not show ten years' continuous service as defined by the judgment in the declaratory relief case, except in one instance. To escape the natural result of this admission, they urge: that each one of them holds a certificate of service and retirement issued by respondents; that the burden of proof rests on respondents to prove lack of ten years' continuous service on the part of

each appellant; that respondents failed to prove that the many breaks in the service of each appellant were not caused by legally authorized vacations or other lawful causes that would not break the continuity of the service.

This is an ingenious if not a convincing argument. It overlooks the elementary rule "that the burden of producing a preponderance of evidence is upon the party who has the affirmative of the issue, and remains upon him throughout the trial". (10 Cal. Jur., p. 785, sec. 91, and cases cited.)

The appellants are the plaintiffs in the action. They have been removed from the retirement system and their pensions have been stopped. They are seeking to avoid the effect of the order of respondents depriving them of their pensions. They have alleged and must prove, before they can prevail, that they are entitled to their pensions. This includes proof of ten years' continuous service or lawful excuse for intermissions in that service. This they failed to do, except in one instance. Our study of the record fails to disclose any evidence of ten years' continuous service on the part of any appellant except A. R. Kennedy.

We have been cited to and have found no provision in the city charter or ordinances giving any particular significance to the certificates of service and retirement issued to appellants. As there is undisputed evidence in the record that none of appellants, except Kennedy, had rendered continuous service for ten years, the mistaken recitals in the certificates cannot be held to have overcome the positive evidence that no appellant, except Kennedy, had rendered continuous service for ten years.

Appellants urge that under the broad provisions of section 146 of the charter which we have quoted, the city council had power to pass and adopt ordinances setting up the retirement system and to establish requirements of and qualifications for retirements and pensions; that under the section such provisions of the ordinances had the same force and effect as the provisions of the charter and became portions of the charter; that such ordinances, when adopted, must be given the same force and effect as though their provisions had been incorporated in the charter. From this they argue that since the retirement ordinances provided that the total time of intermittent and interrupted service be computed and

considered as continuous service and as each appellant, except Brand, had more than ten years' intermittent and interrupted service, each of them was entitled to retirement and a pension. It is true that the provisions of section 146 of the charter, if legal and if liberally construed, might be held to support the foregoing contentions.

■ Section 8 of article XI of the Constitution provides for the framing, ratification and adoption of city charters. An amendment to a charter can only be proposed by the legislative body of the city or by fifteen per cent of its electors or by both. Such amendment must be submitted to and approved by a majority of the electors and must also be submitted to and approved by the legislature at its next regular session following the election. There is no other way in which a city charter may be amended and any attempt to do so in any other manner is void. (*Blanchard* v. *Hartwell*, 131 Cal. 263 [63 Pac. 349]; *Garver* v. *Council of the City of Oakland*, 96 Cal. App. 560 [274 Pac. 375]; *Garver* v. *Williams*, 96 Cal. App. 118 [273 Pac. 604].)

■ If section 146 of the charter must be construed as giving authority to the city council of San Diego by ordinance to add to or subtract from the charter provisions or make regulations for the administration of the retirement system inconsistent with the clear provisions of that document, it must be held to be unconstitutional as attempting to permit the amendment of the charter in an unauthorized manner.

It is clear that certain provisions of the retirement ordinances, as construed and applied prior to 1938, conflict with the provisions of the charter. Certainly, intermittent service is not continuous service and in so far as the ordinances attempt to substitute intermittent service for continuous service as a basis for retirement, their provisions are void as contrary to the charter and as an attempt to amend the charter in an unauthorized manner.

It does not follow that section 146 of the charter is unconstitutional.

''It is a well-recognized canon of interpretation that, where a legislative enactment is susceptible of two constructions, one consistent and the other inconsistent with the provisions of the constitution, such enactment should be so construed as to make it harmonious with the constitution and comport

with the legitimate powers of the legislature." (5 Cal. Jur., p. 615, sec. 46.)

It is our duty to construe the provisions of section 146 of the charter so that they may be held constitutional if that can be done without doing violence to the language of the section and the well-established rules of statutory construction. The section grants to the city council power to pass ordinances proper "to carry into effect the provisions of this article". (Art. IX, Charter.) This quoted portion of the section gives the city council power to pass ordinances to administer and carry out the terms of the charter. It gives no authority to pass any enactment that conflicts with the charter provisions. In view of that provision of the section, we must hold that it is only an ordinance that puts into effect charter provisions that is to have the same force and effect as though a part of and included in the charter; that the section does not empower the city council to pass any ordinance conflicting with the charter or that may have the effect of amending it. With such a construction placed upon it, we believe section 146 of the charter to be constitutional.

It is urged that we are required to put a liberal interpretation on the charter and that the interpretation put upon it by practical construction for a period of years by the administrative officers of the retirement system is persuasive and requires us to include within the term "continuous service" as used in the charter, the intermittent service that was recognized and credited for retirement for several years.

■ The liberal construction of a statute does not include an amendment to or enlargement of its clear provisions by judicial decision. (*In re Jessup,* 81 Cal. 408 [21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594]; *Mulville* v. *City of San Diego,* 183 Cal. 734 [192 Pac. 702].) The word "continuous" is in common use and has a clear and unambiguous meaning. Continuous service, as used in the charter, means consecutive service and does not include intermittent and interrupted service, as appellants would have us conclude.

■ Practical construction of a statute can only be resorted to in order to clear up uncertainties and ambiguities. (*Hodge* v. *McCall,* 185 Cal. 330 [197 Pac. 86]; *People* v. *Sinicrope,* 109 Cal. App. (Supp.) 757 [288 Pac. 61].) The construction of a statute by an administrative board cannot change its clear language or alter its plain meaning. (*Hodge*

v. *McCall, supra;* *People* v. *Kerber,* 152 Cal. 731 [93 Pac. 878, 125 Am. St. Rep. 93] ; *People* v. *Sinicrope, supra,* at p. 767.) The provisions of the charter in question not being uncertain, there is no opportunity for practical construction here.

■ Respondents introduced in evidence the records of service of appellants. That of A. R. Kennedy shows that he worked intermittently during 1919 and until June 30, 1920; that he was transferred to the operating department on July 1, 1920, and worked continuously until June 30, 1931, for more than ten years; that after one year's leave of absence his employment was terminated; that he worked intermittently during 1934 and 1935; that he was retired on November 1, 1935.

We can find nothing in the city charter nor in the retirement ordinances that require the ten years of continuous service to immediately precede the retirement. As, on the record before us, it appears that Kennedy was eligible for retirement and that intervener as his successor in interest is entitled to his retirement pay, the judgment against intervener must be reversed.

■ The service record of B. D. Brand shows that he worked eighteen days in July, 1923; that he was reemployed by the city on July 1, 1925, and served continuously until August 31, 1932, on which day he was retired at the age of 72 years.

Brand argues that as his retirement was involuntary because of age, he is entitled to his pension. This contention is based on the last sentence of section 141 of the charter which provides that ''Retirement shall be compulsory at the age of seventy-two.'' This sentence does not contain any waiver of the prior positive provision in the earlier part of the section denying to the city council the power to provide by ordinance for the retirement and pension of any employee not having served the city continuously for ten years. In view of the positive provisions of that portion of the charter, an employee lacking ten years' continuous service could not be retired and pensioned except in case of disability. There is no showing that Brand was disabled at the time of his retirement. Therefore he did not possess the necessary qualifications for retirement and a pension.

The judgment against plaintiffs is affirmed. The judgment against intervener is reversed.

Barnard, P. J., concurred.

Griffin, J., being disqualified, did not participate herein.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 7, 1939, and the following opinion then rendered thereon:

MARKS, J.—Respondents have filed a petition for rehearing and present two questions that require further notice. They first urge that the judgment in the declaratory relief action has become final, is binding on intervener and precludes her from recovering anything in this action. They next urge that our statement in the opinion that intervener, as successor in interest of A. R. Kennedy, "is entitled to his retirement pay" has the effect of awarding her $32.50 a month for life, when, under an optional selection made by Kennedy during his lifetime, she was only entitled to receive a smaller monthly payment until a reserve fund is exhausted. We will consider the two questions in the order stated.

Mrs. Kennedy was not a party to the declaratory relief action. There is nothing in the record before us indicating that she either actively or tacitly participated in its prosecution or actually knew that it was filed or prosecuted. Our order merely reverses the judgment against her and has the effect of remanding her action for new trial. The effect of the judgment in the declaratory relief action may be inquired into and determined at such time. Under the very unsatisfactory condition of the record before us, we expressly refrain from passing upon the question of the effect, if any, of that judgment on the suit of intervener.

When we said in the opinion that: "We can find nothing in the city charter nor in the retirement ordinances that require the ten years of continuous service to immediately precede the retirement. As, on the record before us, it appears that Kennedy was eligible for retirement and that intervener as his successor in interest is entitled to his retire-

ment pay, the judgment against intervener must be reversed'' we spoke rather loosely.

We did not and do not now intend to intimate that Kennedy or intervener as his successor in interest was or is entitled to any particular amount or kind of retirement benefits. All we intended to state was that at the time of his retirement Kennedy was entitled to something in the form of retirement and that intervener succeeded to his rights. The amount and character of those payments cannot be determined from the record. Nor can we determine whether the fund from which those payments have been made has been exhausted if the source of such payments be limited to any particular fund or amount.

All that we intend to hold is that, on the record before us, it appears that intervener might be entitled to some payments from the retirement fund. As this portion of the case must be retried, the character, amount, duration, and other necessary facts concerning such payments and the fund from which they may be drawn, if any, may be determined at that time, if the evidence discloses that she is entitled to receive anything in addition to the payments already made.

The petition for rehearing is denied.

Barnard, P. J., concurred.

Griffin, J., being disqualified, did not participate herein.