[Civ. No. 11315. First Appellate District, Division Two.—March 5, 1940.]

THE MORRIS PLAN COMPANY OF SAN FRANCISCO (a Corporation), Respondent, v. CHARLES G. JOHNSON, as State Treasurer, etc., Appellant.

Earl Warren, Attorney-General, H. H. Linney and James J. Arditto, Deputies Attorney-General, for Appellant.

Samuel S. Stevens, Richard E. Guggenhime and Heller, Ehrman, White & McAuliffe for Respondent.

STURTEVANT, J.—The plaintiff was awarded judgment against the defendant in an action brought to recover a franchise tax for the year ending December 31, 1936, claimed to have been illegally collected from it. The defendant has appealed from the judgment. The plaintiff was incorporated under the Industrial Loan Company Law (Deering's General Laws (1937), Act No. 3603), hereinafter referred to as Act No. 3603. The controversy involves the proper interpretation of the provisions of chapter 13 of the Statutes of 1929 and the acts amendatory thereof, hereinafter referred to as the Franchise Tax Act. The defendant claims the plaintiff was properly taxed as a "financial corporation" as provided in the first paragraph of section 4 of said statute at the rate provided in section 4 (a) thereof. The plaintiff disputes that claim and asserts it was liable for taxes as a general business corporation as provided in section 9 of Act No. 3603, that it has paid its taxes, and that it is not liable as a "financial corporation". So contending it pleaded the facts. Issue was joined and a trial was had. Witnesses were called by

each party and they were examined and cross-examined. Later the trial court made and filed findings of fact and conclusions of law in which it was found that the plaintiff was not a "financial corporation" and that, in 1936, it was not in "substantial competition" with national banks. The defendant claims neither finding was sustained by the evidence.

As noted above the case presents questions of statutory construction. Those questions arise out of a history of legislation in this state covering many years. That history is recited in *Pacific Co., Ltd.,* v. *Johnson,* 212 Cal. 148 [298 Pac. 489], to which reference is specially made.

As stated above the defendant claims the evidence is insufficient to support the findings that the plaintiff was not a "financial corporation" and that it was not "in substantial competition with national or state banks" in the year 1936. We will take up a consideration of the latter finding first. The uncontradicted evidence before the trial court showed that in the year 1936 the Bank of America, and the Pacific National Bank, were national banks transacting business in San Francisco and in other parts of the state. Each was engaged in loaning money. The combined capital and surplus of the Bank of America was in excess of $110,000,000. The plaintiff's combined capital and surplus was in excess of $625,000. Such loans included personal loans, instalment loans, and discounting contracts for the payment of money. At times each advertised for such business. Some of those loans included the discount or purchase of conditional sales contracts of furniture, refrigerators, burners, gas burners, gas furnaces, washing machines, radios, automobiles, and many other articles. Other national banks transacted business in San Francisco and made similar contracts. At the time of the trial the Bank of America had outstanding such loans in the sum of $39,000,000. The Pacific National had about $900,000. The plaintiff was, in the same locality, making similar loans and had outstanding about $4,500,000. The foregoing facts show, as a matter of law, that the plaintiff was in substantial competition with the loan and investment features of the business of national banks. (*Title Guarantee Loan & Trust Co.* v. *State,* 228 Ala. 636 [155 So. 305, 308]; *State* v. *National Credit Co.,* 236 Ala. 224 [181 So. 769, 771].) Competition within the meaning of section 5219, Revised Statutes of the United States, does not mean there should be a

competition as to "all phases of the business of national banks . . . section 5219 is violated whenever capital, substantial in amount, when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engaged and in the same locality in which they do business. . . . It is enough as stated if both engage in seeking and securing in the same locality capital investments of the class now under consideration which are substantial in amount, . . . even though the competition be with some, but not all, phases of the business of national banks, or it may arise from the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks. (*State of Minnesota* v. *First Nat. Bank*, 273 U. S. 561 [47 Sup. Ct. 468, 71 L. Ed. 774].)" (*Ward* v. *First Nat. Bank of Hartford*, 225 Ala. 10 [142 So. 93, 95, 96].) It is clear, therefore, that plaintiff was doing business in competition with the national banks.

█ Taking up the attack on the finding that the plaintiff is not a "financial corporation", the briefs of counsel revolve around the fact that the Franchise Tax Act does not define the term. That contention is not helpful. The pleadings admit the plaintiff is a corporation. Section 5 of the Franchise Tax Act provides: "The term 'corporation' as herein used, shall include every corporation, other than a bank or banking association . . . " The word "financial" when used with reference to corporations, refers to corporations dealing in money as distinguished from other commodities. (Webster's New International Dictionary.) Furthermore, to compete with a national bank implies the performance of some banking functions performed by a national bank. It follows that the words "financial corporation", as used in section 5219, Revised Statutes, and adopted into our Franchise Tax Act, designate and include moneyed corporations performing some of the functions of a national bank. The plaintiff was certainly an institution of that class.

█ The plaintiff claims the Bank and Corporations Franchise Tax Act is ambiguous, that the fiscal officers have heretofore construed it in favor of the plaintiff, and that the defendant is bound by that construction. We think that contention is not sound. In the first place said statute is not ambiguous and for that reason the contention may not be

sustained. (*Hodge* v. *McCall*, 185 Cal. 330, 334 [197 Pac. 86].) In the second place the record does not disclose any facts showing that prior to the year 1936 any officer of the state knew the facts showing the plaintiff was so conducting its business as to compete with national banks. However, in its brief, the plaintiff sets forth two letters. One contains nothing showing competition with national banks through acts of an Industrial Loan Corporation. It was written about six months before this action was commenced. The other purports to be portions of Opinion No. 8599 rendered by the attorney-general June 1, 1933. The record discloses, however, that said opinion was recalled. In *Hodge* v. *McCall*, 185 Cal. 330, at page 334 [197 Pac. 86], Mr. Justice Olney, speaking for the court, said : "If its meaning be doubtful, then the construction put upon it in actual administration by the officers intrusted with that administration should be given great weight by the courts in determining its true meaning. But if its meaning be not doubtful, and the regulations are in conflict with that meaning, they are simply void. If this be not true, it is within the power of the department officials to override and annul an act of Congress." For these reasons we think the rule of departmental construction is not applicable.

In Louisiana, notwithstanding they have the right to do so, national banks do not make the class of personal loans made by this plaintiff. On the other hand they make their loans to the vendors and require the latter to make the collections on, and handle their own conditional sales contracts and similar instruments. In the consolidated cases entitled *First Nat. Bank* v. *Louisiana Tax Com.*, 289 U. S. 60 [53 Sup. Ct. 511, 77 L. Ed. 1030, 87 A. L. R. 840], it was contended that certain institutions were transacting business in competition with the national banks and that said banks were being discriminated against. The cases were tried in the state courts. The Supreme Court of Louisiana made findings to the effect that the competition complained of had not occurred. Holding it was not warranted in disturbing the findings of the state court, the Supreme Court of the United States, through Mr. Justice Brandeis, affirmed the judgment of the Supreme Court of Louisiana. There is nothing in that case in conflict with the instant case.

█ The plaintiff claims that under section 9 of the Industrial Loan Law it was subject to taxation solely as a general corporation. That was so in 1917 when the Industrial Loan Act was enacted. However, a subsequent legislature had the power to change the rule and reclassify corporations for purposes of taxation. That, and that only, is the effect of the first paragraph of section 4 and section 4 (a) of the Franchise Tax Act. That act shows a departure from section 9 of the Industrial Loan Act, but no question of repeal by implication is involved. The real principle involved, as we see it, is a substitution by revision. In 1929 there were numerous sections in the Political Code applicable to the taxation of the intangibles of banks and other corporations. When the Bank and Corporation Franchise Tax Act was passed, on its face it purported to revise that entire subject. It purports to cover every phase of the levy, assessment, and collection of said taxes. In *State* v. *Conkling,* 19 Cal. 501, at page 512, the court said: "We do not consider that the rule applicable here is, that this is a repeal by implication as that rule is usually applied; but the principle is, that when the Legislature makes a revision of particular statutes, and frames a general statute upon the subject matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored. It was upon this principle that the case of *Sacramento* v. *Bird* (15 Cal. 294) was decided. . . Mr. Justice Cope, delivering the opinion of the Court, used this language, which we think correctly gives the rule: 'It is impossible to avoid the conclusion that this salary is in lieu of the per cent. previously allowed, and was not intended as additional compensation to the Treasurer. It is true, the law does not favor the repeal of statutes by implication, but it is not true that a statute, without negative words, will in no case repeal the provisions of a former one, unless the two acts are directly repugnant and inconsistent. Every statute must be considered according to what appears to have been the intention of the Legislature, and even though two statutes relating to the same subject be not in terms repugnant or inconsistent, if the latter statute was clearly intended to prescribe the only rule which should govern in the case provided for, it will be

construed as repealing the original act. (Sedg. on Const. and Stat. Law, 124.) . . . ' This doctrine of construction not only commends itself by its plain sense and justice, but is sanctioned by numerous authorities. (Sedg. on Const. and Stat. Law, 124.) (See, also, *Pierpont* v. *Crouch* (10 Cal. [315] 316), in which case the authorities are collected in the opinion of the present Chief Justice.''

The judgment appealed from is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 4, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 2, 1940. Carter, J., voted for a hearing.