CENTRAL NATIONAL BANK OF LINCOLN ET AL., PLAINTIFFS,
v. ALFRED E. SUTHERLAND, TREASURER OF LAN-
CASTER COUNTY, ET AL., DEFENDANTS.

FILED FEBRUARY 17, 1925. No. 24487.

1. **Taxation:** SHARES OF STOCK IN BANKS. The Nebraska revenue law, classifying property as tangible and intangible, and providing that shares of stock in banks, banking associations

and trust companies shall be listed at their true value and assessed upon the full mill-rate levy, while other intangible property, with certain exceptions, is required to be listed at its true value and assessed at 25 per cent. of the mill-rate levy, is invalid as to national banks, because it conflicted with an act of congress, as then existing, forbidding states to tax shares of stock in national banks at a greater rate than is assessed on other moneyed capital, and with national banks eliminated is, as to state banks, unconstitutional, because it conflicts with our state Constitution requiring taxes to be uniform as to class.  Comp. St. 1922, sec. 5887; Rev. St. U. S. (1878) sec. 5219, p. 1009; Nebraska Const., art. VIII, sec. 1.

2.  Constitutional Law:  INVALID STATUTE.  If a legislative act when enacted is violative of the provisions of our Constitution, it cannot subsequently become a valid law merely because the reason for its invalidity has been removed, without being subsequently reenacted by the legislature.

Original suit to restrain collection of taxes.  *Injunction allowed.*

*Hainer & Flansburg, Charles H. Kelsey, W. A. Prince, Good & Good* and *Arthur W. Richardson,* for plaintiffs.

*O. S. Spillman, Attorney General, George W. Ayres, Hugh LaMaster* and *Charles E. Matson, contra.*

*Edgar M. Morsman, Jr., amicus curiæ.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EVANS, JJ.

DAY, J.

This is an original action in this court brought by the plaintiffs, a national bank, a state bank, and a trust company, against the defendants as tax collecting officers of Lancaster county, Nebraska, to enjoin them from collecting certain taxes assessed against the shares of stock of the plaintiff corporations for the year 1923.

The taxes sought to be enjoined were assessed against the shares of stock of the plaintiff corporations under the provisions of the revenue law passed by the legislature in 1921, and particularly under the provisions of section 4,

art. VIII, ch. 133, Laws 1921, being section 5887, Comp. St. 1922, and which will be hereinafter referred to as section 5887.

Acting upon authority of the provisions of the Constitution, the legislature of 1921 passed an act which made some important changes in the revenue laws of the state. Speaking generally, it classified property subject to taxation into two groups, viz., tangible and intangible. With respect to tangible property, the act provided that it was to be listed for taxation at its true value and assessed upon the full mill-rate levy. With respect to intangible property, the act provided that it was to be listed at its true value, and with certain exceptions was to be assessed at 25 per cent. of the mill rate levied upon tangible property. Section 4, art. VIII of the act, now section 5887, provided a basis for the taxation of shares of stock in banks, banking associations, loan and trust, or investment companies. After providing the method of listing the shares of stock of such corporations or associations, at their true value, it was provided that the shares of stock be assessed at the same rate as other tangible property in the taxing district where the principal place of such bank or company is located.

The act contained other provisions respecting the manner of collecting the tax, which provisions are not now material to the questions being considered. It will at once be observed that the class of intangible property mentioned in section 5887 is assessed at four times the mill-rate levy assessed upon other intangible property.

It is the theory of the plaintiffs that the provisions of section 5887, under which the taxing authorities acted in levying the assessment, are unconstitutional and void and were so held to be in *State Bank v. Endres*, 109 Neb. 753, and that therefore the pretended assessment is of no force or effect.

At the time of the enactment of section 5887 by our legislature, section 5219 of the United States Revised Statutes, as then existing, was in full force and effect, and

provided, in substance, that the legislature of each state may determine the manner and place of taxing shares of national banks located within the state, subject to the restriction that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state."

Subsequent to the passage of section 5887, the supreme court of the United States, in *Merchants Nat. Bank v. City of Richmond,* 256 U. S. 635, pointed out more clearly than theretofore the meaning of the phrase "moneyed capital" as used in section 5219. In passing upon that question the court said:

" 'Moneyed capital in the hands of individual citizens' includes bonds, notes and other evidences of indebtedness in the hands of individ--!s, which are shown to come materially into competition with the national banks in the loan market."

After the decision in the *Merchants Nat. Bank* case, the State Bank of Omaha commenced an original action in this court to enjoin the collection of taxes assessed against it under the provisions of section 5887, upon the ground that the provisions of the section relating to the taxation of banks was unconstitutional. Our decision in that case, *State Bank v. Endres,* 109 Neb. 753, was filed February 27, 1923.

On March 4, 1923, congress amended section 5219 by inserting, among other things, the words: "Provided that bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments, not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." 42 St. at Large, ch. 267, sec. 5219, 1b, p. 1499.

Subsequent to the amendment of section 5219 by congress, the taxing authorities of Lancaster county, acting upon the provisions of section 5887, assessed the shares of stock of plaintiff corporations for the year 1923 upon

the same basis as tangible property. It was evidently the theory of the taxing authorities that the act of congress of March 4, 1923, gave to the state the right to tax national banks upon the same basis as state banks, and that by reason of the act of congress, section 5887, in its entirety, became fully operative.

The plaintiffs thereupon tendered to the treasurer of Lancaster county an amount based upon the mill-rate levy of intangible property in payment of the taxes assessed, which the treasurer refused to accept. Thereupon the plaintiffs instituted the present action.

On the other hand, it is contended by the attorney general for the defendants that the effect of our decision in the state bank case was to hold that section 5887 was merely inoperative because the provisions of section 5219 prevented its operation as against national banks. The argument is made that when the disability was removed by congress, by the amendment of March 4, 1923, the provisions of section 5887 again became fully operative.

There is authority for the rule that, when a statute of a state is rendered inoperative by virtue of an act of congress, such statute comes into full operation after the removal of the objections thereto. *Tinker v. State*, 90 Ala. 638; *In re Rahrer*, 140 U. S. 545; *In re Van Vliet*, 43 Fed. 761; *Smyth v. Ames*, 171 U. S. 361.

We are of the view, however, that this rule cannot be invoked as applying to the present situation because the provisions of section 5887 complained of were unconstitutional at the time of their enactment, and no subsequent act of congress could give them life.

In *State Bank v. Endres*, 109 Neb. 753, the opinion declares that section 5887, in so far as it prescribes a method for taxing shares of stock in a national bank, is invalid, because it conflicts with an act of congress forbidding states to tax shares of stock of a national bank at a greater rate than is assessed upon other moneyed capital. While it is true that section 5887 does not use the term "national banks" in referring to the assessment of shares of stock,

it seems clear that it was the intention of the legislature in using the word "banks" to include all banks, national as well as state.

The court further held that, with national banks excluded from the operation of the section, the portion of the section complained of would be invalid as to state banks, because the latter would then be taxed at a higher rate than national banks, and therefore the provisions of the section referring to this basis of taxation would conflict with section 1, art. VIII, of the Constitution, requiring taxes to be uniform as to class.

Under the situation existing at the time of the passage of the provisions of section 5887 respecting the taxation of banks, the legislative action was unconstitutional from the date of its passage.

An act which is forbidden by the Constitution at the time of its passage is null and void.

In *Whetstone v. Slonaker,* 110 Neb. 343, it is held: "An act of the legislature that is forbidden by the Constitution at the time of its passage is absolutely null and void, and is not validated by a subsequent amendment to the Constitution authorizing it to pass such an act." See *Finders v. Bodle,* 58 Neb. 57.

It was held by the supreme court of the United States in *Norton v. Shelby County,* 118 U. S. 425: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection, it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

The provisions of the section complained of, being unconstitutional, could not be revived by an act of congress. The only method by which it could become the law of the state is by affirmative action by the legislature, which is the law-making body under the Constitution. Our Constitution provides that laws, except those passed with an emergency clause, become operative three calendar months after the adjournment of the legislature at which they were passed. If the theory of the defendant is to be adopted, the

law in question became operative after congress amended section 5219 on March 4, 1923, more than a year and a half after the adjournment of the legislature in 1921. Such position is untenable.

The plaintiffs have offered to do equity by tendering to the treasurer an amount equal to an assessment upon the basis of other intangible property. An injunction is allowed enjoining the defendants from collecting from the plaintiffs upon the assessment any sum in excess of 25 per cent. of the mill-rate levy.

INJUNCTION ALLOWED.

THOMPSON, J., dissenting.

I dissent for the reason, among others, that this case is controlled by the rule announced and followed in *Smyth v. Ames*, 169 U. S. 466; *Century Oil Co. v. Department of Agriculture*, 112 Neb. 73. The law in question does not contravene the Constitution, but simply became inoperative because of a condition then existing. On removal of the condition, the law automatically became operative.

EVANS, J., concurs in this dissent.