142 So. 552

### PHELPS v. UNION BANK & TRUST CO.

3 Div. 12.

Supreme Court of Alabama.

May 19, 1932.

Rehearing Denied June 16, 1932.

Wm. B. White, John S. Coleman, and Bradley, Baldwin, All & White, all of Birmingham, for appellee.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty Gen., for appellant.

PER CURIAM.

The inherent power of the state to collect taxes to raise revenue on property within its jurisdiction and on domestic concerns is an attribute of sovereignty residing in the Legislature, and, so long as it does not impinge the limitations fixed by the Constitution, or trench upon the prerogatives of the national government, or violate the guaranties of the Fourteenth Amendment of the Constitution of the United States, its powers are unlimited and unrestrained. This power is not a delegated power, but a power inherent in the state, essential to its life and continued existence. Phœnix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; Ohio Oil Co. v. Conway, 281 U. S. 146, 159, 50 S. Ct. 310, 74 L. Ed. 775.

The power to tax the stock in banks of the United States, agencies of the national government, in the accomplishment of its constitutional purposes, is not an inherent power residing in the state, but a power delegated by Congress. Such agencies cannot be taxed except by the consent of Congress. Cooley's Const. Law (8th Ed.) p. 991.

In the exercise of this delegated power, the Legislature must conform to the restrictions in the acts of Congress delegating this power; otherwise the effort of the Legislature to exercise this power is abortive and void. Ward, Tax Collector, v. First National Bank of Hartford, ante, p. 10, 142 So. 93; Mercantile Nat. Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895.

The limitation on the power of the Legislature to levy a direct tax on property, found in sections 211 and 217 of our Constitution, is a limitation on the inherent power of the state, and not on the power to tax delegated by the federal statute. The limitation on this power is found in section 5219 of the United States Revised Statutes (12 USCA § 548). Maguire v. Board of Revenue & Road Commissioners of Mobile County, 71 Ala. 401; Pollard v. State ex rel. Zuber, 65 Ala. 628.

Therefore, when the Legislature, in the exercise of the power delegated by the federal statute, efficaciously levies a tax on the stock of United States banks, in conformity with the statute, such levy reflects the limitation embodied in the Constitution in respect to the levy on subjects of taxation within the inherent power of the state, and requires substantial uniformity. Such was the case dealt with in State Bank v. Board of Revenue, 91 Ala. 217, 8 So. 852.

But where, as in the case at bar, the attempted exercise of the delegated power of taxation under the federal statute is abortive, there is no basis for applying the limitation embodied in section 217 of the Constitution to taxes levied in the exercise of the state's inherent power on domestic bank stock; therefore the plaintiff was not entitled to recover.

We are in full accord with the minority view that there is "no semblance of justice in taxing the shares of State banks and excluding those of National banks." But we entertain the view the remedy for such injustice lies with the lawmaking power of the state and federal government, by amendment of the federal statute, as now proposed by the pending bill in Congress, so as to permit the taxation of national banks in like manner and to like extent as state banks; and, if this is not done, the Legislature should conform to the requirements of the federal law. The result of such injustice in this particular instance does not justify a surrender of the inherent power of the sovereign state to tax its own subjects and exercise its own prerogatives.

Upon the question of taxation, the Legislature of this state had the power to make exemptions and classifications free from interference by the courts unless there results inequality, not only oppressive in its operation, but so glaring as that it can be judicially declared to be founded on arbitrary and capricious principles, without the just semblance of reason. Subject to this limitation, the legislative power to select proper subjects of taxation and to classify them upon principles which to them seem just cannot be circumscribed by the courts. There must be, of necessity, left a liberal scope for the free exercise of this presumably wise discretion. Moog v. Randolph, 77 Ala. 597.

Upon this well-recognized principle the system of classification and exemption by the Legislature as to moneyed capital is a matter resting with the lawmaking power, and is not such as to justify the interference by the court.

Like reasoning as outlined in this opinion leads to the conclusion that the state system of taxation here questioned violates no provision of the Fourteenth Amendment to the Constitution of the United States. Ohio Oil Co. v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775.

The judgment of the circuit court is reversed, and one here rendered for the defendant.

Reversed and rendered.

GARDNER, THOMAS, BROWN, and KNIGHT, JJ., concur.

BOULDIN, J. (dissenting).

Union Bank & Trust Company, a state banking corporation, paid under protest the ad valorem taxes assessed against its shareholders upon their shares of stock for the tax year ending September 30, 1931, and brought the present action against the tax collector to enforce a refund.

Broadly stated, the theory of the suit is that, by a course of legislation, exempting or omitting as subjects of taxation, other moneyed capital, the tax structure of the state is such as to work a repeal of the statute subjecting shares of stock in state banks to ad valorem taxation—this by force of the uniformity provisions of our State Constitution. The federal law dealing with the taxation of shares in national banks is brought under consideration as affecting the status upon which our Constitution operates.

We take note, first, of the statutes and constitutional provisions involved.

Section 5219, United States Revised Statutes, reads:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

National banks being agencies or instrumentalities of the federal government in relation to its currency and fiscal affairs, the power of Congress to impose restrictions preventing discrimination by state tax laws against the holders of stock in such banks in favor of competing moneyed capital has been long settled and is unchallenged.

"The terms of the act of congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are, from time to time, according to the rules of the business, reduced again to money, and reinvested." Mercantile Nat. Bank v. New York, 121 U. S. 157, 7 S. Ct. 826, 836, 30 L. Ed. 895.

"All taxes levied on property in this state shall be assessed in exact proportion to the value of such property." Constitution of Alabama, § 211.

"The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate." Constitution of Alabama, § 217.

In Mayor, etc., of Mobile v. Stonewall Insurance Co., 53 Ala. 570, this court considered a provision of the Constitution of 1868 to like effect as section 217 of our present Constitution above quoted. That case dealt with a statute prescribing a different and lower rate of municipal taxation upon certain moneyed capital employed by corporations from that similarly employed by individual citizens. In an extended opinion by Chief Justice Brickell, among other things, the court declared:

"Invidious exemptions or discriminations, by which the property of an individual, or of a corporation, is relieved from bearing a just proportion of the common burden taxation is intended to discharge, are violative of the equality of right of the citizen, which is a fundamental principle of our institutions. To prevent any exemption or discrimination in favor of corporations, to subject their property to the same rate of taxation to which the property of individuals of the same kind is subject, is the purpose of the constitutional provision, clearly expressed: 'The property of corporations now existing, or hereafter created, shall forever be subject to taxation, the same as property of individuals,' etc. * * * If property of a particular kind is subjected to taxation, and owned by a corporation, it must bear the rate of taxation imposed on individuals. While the constitution inhibits the exemption or discrimination in favor of corporations, it equally inhibits a discrimination against them. Equality in bearing a common burthen, which is natural right and equity, is secured alike to the corporation and to the citizen." Mayor, etc., of City of Mobile v. Stonewall Ins. Co., 53 Ala. 579, 580, 581.

We note that, in the above case, it appearing that provision was made by law for assessment of such property, the court held the discriminatory provision invalid and sub-

jected the property to the same rate as like property assessed to individuals.

In National Commercial Bank of Mobile v. Mayor, Aldermen & Common Council of Mobile, 62 Ala. 284, 34 Am. Rep. 15, this court considered section 5219 of United States Revised Statutes, above quoted. A distinction was there drawn between the capital of a national bank and the shares as private property of the individual shareholder, quoting the following from Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229:

" 'The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the charter and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own.' 'The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital,' etc. 'This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of Congress has left subject to State taxation under the limitations prescribed.' " National Commercial Bank of Mobile v. Mayor, etc., of Mobile, 62 Ala. 294, 34 Am. Rep. 15.

To like effect, see Sumter County v. National Bank of Gainesville, 62 Ala. 464, 34 Am. Rep. 30.

In State Bank v. Board of Revenue, 91 Ala. 217, 8 So. 852, the court considered the effect of sections 211 and 217 of our Constitution (then sections 1 and 6, article 11, of the Constitution of 1875) along with section 5219 of United States Revised Statutes, and directly applied the same to ad valorem taxes upon the shares of state banks and national banks. The statute then in force, apparently out of desire to avoid a possible conflict with the federal statute, permitted a deduction of the indebtedness of the shareholder in a national bank from the value of his shares, taxing only the residue, if any; while no such deduction was allowed in assessing the shares in state banks.

Defining the effect of sections 211 and 217 of our Constitution, in an opinion by Chief Justice Stone, it was said:

"What we do decide is that, whenever the legislature levies a tax on property, the rate must be in exact proportion to the value of such property; and that, if a tax is imposed on any species of property, all property belonging to that species must be taxed at the same rate, whether it belongs to an individual, an association of persons, or to a private corporation. We mean by this not only that in this record natural persons, individuals, or companies stand on the same footing with private corporations, but also that each individual, association, or private corporation is, under our constitution, endowed with the same rights, and subject to the same burdens, as are enjoyed or suffered by every other natural person, association of persons, or private corporation. The following authorities render it unnecessary for us to go into the argument at greater length: Mayor of Mobile v. Stonewall Ins. Co., 53 Ala. 570; State Auditor v. Jackson County, 65 Ala. 142; Maguire v. Board of Revenue, 71 Ala. 401. See, also, Nat. Commercial Bank v. Mayor, 62 Ala. 284 [34 Am. Rep. 15]; Sumter County v. Nat. Bank, 62 Ala. 464 [34 Am. Rep. 30]; Perry County v. Railroad Co., 65 Ala. 391; Pollard v. State ex rel., 65 Ala. 628.

"We need scarcely say that bank shares in a national bank and bank shares in a state bank belong to one species of moneyed capital. Any attempt to draw a distinction between them as subjects of taxation would be futile. In assessing the one our statute allows a deduction of the taxpayer's indebtedness, and taxes the surplus. In assessing the other it allows no such deduction. We hold that this is a violation of section 6, art. 11, of Alabama's constitution, and that the shareholders in state banks are entitled to the same deductions as the statute accords to the shareholders of national banks." State Bank v. Board of Revenue, 91 Ala. 223, 8 So. 852, 855.

Following this decision, the Legislature, in the Revenue Act of 1895, construed in Jefferson County Savings Bank v. Hewitt, 112 Ala. 546, 20 So. 926, sought to remedy the defects of the former statute; and the Legislature of 1896 (Laws 1896–97, p. 1510, § 36) further amended same as appears in the Code of 1896, § 3911, subd. 8.

This statute, intended to conform to all the requirements of section 5219 of the Revised Statutes of the United States, listed as part of the taxable property of the state every share in state banks and national banks. It provided a method of ascertaining the value of the shares, deduction of assessed value of real estate, assessment of the residue against the shareholders, and payment of such tax by the bank.

This scheme of taxing the shares in both state and national banks has been in force and re-enacted from time to time until this date. Gen. Acts 1923, p. 161, § 6. Provision is also made for taxation of unincorporated banks on substantially a like basis. Acts 1923, § 5, p. 160.

The same law of 1896 listed the shares in other corporations as part of the taxable property of the state, and provided the method of assessment and payment. Code of 1896, § 3911, subd. 9. This general scheme as to shares in domestic corporations has been re-enacted from time to time. Acts of 1923, p. 162, § 8.

In the General Revenue Act of 1927, this statute of 1923 as to shares in domestic corporations, other than banks and banking associations, was re-enacted without change of substance, save in the matter of exceptions or exemptions. Acts 1927, p. 166, § 25.

The act of 1923 excepted shares in building and loan associations. The act of 1927 added as exceptions "mortgage companies or corporations making loans on real estate or purchasing mortgages or mortgage notes on real estate and industrial loan companies or corporations," and concludes with the following:

"Provided, however, that the provisions of this Act, shall not apply to the shares of stock of domestic or foreign mortgage companies or corporations whose chief business is making loans on real estate, or purchasing mortgages and mortgage notes on real estate; nor shall this Act apply to the shares of domestic or foreign industrial loan companies or corporations, it being hereby expressly enacted that all shares of stock of such domestic and foreign mortgage companies or corporations and domestic and foreign industrial loan companies or corporations, shall be exempted from assessment and the payment of ad valorem taxes." Gen. Acts 1927, p. 168.

With this legislative situation before us, we proceed to consider the case made by the present record.

The cause was tried upon an agreed statement of facts. The eighth, ninth, and eleventh paragraphs of agreed facts are as follows:

"Eighth: In the State of Alabama during 1930, 1931 and 1932 to date, there were many hundreds of thousands of dollars of moneyed capital in substantial and actual competition with the business of both National Banks and State Banks located in the County of Montgomery and in the State of Alabama other than moneyed capital representing merely personal investments and not made in competition with such banking business, used and employed in the business of mortgage companies, industrial loan companies, investment security dealers and companies, building and loan associations, insurance companies and corporations, and individuals engaged in financial businesses, all of which loaned money on real and personal security and without security, some of which dealt in investment securities and otherwise used moneyed capital in substantial and actual competition with the business of both National Banks and State Banks, which moneyed capital is, and was during said period, taxed at a lesser rate in the sense of burden imposed, than the rate of taxation sought by Section 6 of the General Acts of 1923, page 152, to be exacted upon the shares of National Banks and the shares of State Banks located within the State of Alabama, or is, and was during said period, expressly untaxed or exempted wholly from taxation.

"Ninth: During said years 1930, 1931 and 1932 to date, there were and are building and loan associations, industrial loan companies and corporations, and industrial banks which engaged in business in the City of Montgomery, Montgomery County, Alabama, and loaned money in substantial and actual competition with the National Banks located in said City and County of Montgomery and in substantial and actual competition with the plaintiff State Bank to the extent of hundreds of thousands of dollars, the shares of capital stock and capital of which were, during said period, exempted from the assessment and payment of ad valorem taxes and were left by the laws of Alabama entirely untaxed, or were taxed at a lesser rate, in the sense of burden imposed, than the said shares of plaintiff or the shares of National Banks. During said period there were likewise mortgage companies and corporations making loans on real estate in the City of Montgomery and County of Montgomery and purchasing mortgages and mortgage notes on real estate in said City and County to the extent of many thousands of dollars in substantial and actual competition with the businesses conducted by the National Banks located in the City of Montgomery, Montgomery County, Alabama, and the plaintiff bank, which were exempted by the laws of Aabama from any tax upon their shares of capital stock or capital or left by the laws of Alabama wholly untaxed for ad valorem tax purposes with respect to their shares of capital stock, or were taxed at a lesser rate, in the sense of burden imposed, than the said shares of plaintiff or the shares of National Banks. During said period, there were insurance companies organized under the laws of Alabama and doing business in said City of Montgomery, Alabama, lending money on mortgages and purchasing state, municipal and other bonds in substantially the same manner as state and national banks located in Alabama, to the extent of many thousands of dollars, which were entitled to certain credits or exemptions in computation of the tax assessed upon their shares of capital stock or capital by the laws of the state of Alabama for ad valorem tax purposes, which credits or exemptions were not accorded under the laws of Alabama in computation of assessments on the shares of capital stock or capital of said National Banks and State Banks, including said shares of plaintiff bank. During the said period, in the conduct of plaintiff's business and in the conduct of the businesses of the National Banks located in said City and County and in lending money and purchasing notes, bonds, stocks and securities, plaintiff bank and said National Banks found in actual and substantial competition with them other individuals, persons, firms, associations and corporations engaged in like

business or businesses and using moneyed capital therein to the extent of many thousands of dollars, which moneyed capital was not assessed or taxed for ad valorem taxes under the laws of Alabama and was either expressly exempted by said laws or left untaxed by said laws, or was taxed, at a lesser rate, in the sense of burden imposed, than the said shares of plaintiff or the shares of National Banks. During said period, a large amount of property of like character to that of the shares of capital stock and capital of plaintiff bank and said National Banks, in the form of money loaned, bills and notes discounted, securities bought and sold, by a large number of persons, firms and corporations engaged in like businesses to the businesses of said National Banks and State Banks, including plaintiff bank, to the extent of many thousands of dollars in actual and substantial competition with the business of said National Banks and plaintiff bank was not assessed for taxation but was exempted by the laws of Alabama from ad valorem taxation or left untaxed by said laws, or was taxed at a lesser rate, in the sense of burden imposed, than the said shares of plaintiff or the shares of National Banks."

"Eleventh: That many of the corporations hereinabove mentioned are corporations organized and existing under the laws of Alabama and that during the times herein mentioned thousands of the shares of the capital stocks of said Alabama corporations were held and owned by the shareholders thereof."

Further stipulations disclose that national banks in certain cities in Alabama have, because of this discrimination in taxing moneyed capital, refused to pay the ad valorem tax assessed against their shareholders, and test cases have been finally adjudicated by the federal courts in Alabama in their favor; that the tax collector of Montgomery county has not collected, nor is he making any effort to collect, ad valorem taxes assessed against the shareholders of the national banks in the city of Montgomery.

This is pursuant to an opinion of the Attorney General rendered upon a request from the tax collector setting forth the untaxed competitive moneyed capital in substance as here agreed.

The appellant does not here contend that shares of national banks are now subject to the ad valorem tax in question. We deem it important, however, to determine the question on the law and facts without regard to the views of the Attorney General.

Without considering whether all the corporations and associations mentioned in the agreed facts as employing moneyed capital in the loan and investment features of their businesses in competition with banks are tax free, or taxed at a lower rate in the sense

of the burden imposed, we must hold that the record discloses substantial competition with both state and national banks on the part of corporations engaged in the loan and investment business, using and employing moneyed capital in such competitive business, which corporations or associations are subject to the laws of Alabama relating to taxation of shares of stock as the property of shareholders, and which, by our laws, are wholly exempt, or taxed at lower rates, in the sense of the tax burden imposed. As a result, we must further hold, following the decisions of the Supreme Court of the United States as final authority, the shares of national banks in Montgomery are no longer subject to ad valorem taxation. Ward v. First Nat. Bank of Hartford (Ala. Sup.) 142 So. 93;[1] First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295; Mercantile Nat. Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895; New York v. Weaver, 100 U. S. 539, 25 L. Ed. 705; First Nat. Bank v. Chapman, 173 U. S. 205, 19 S. Ct. 407, 43 L. Ed. 669; First Nat. Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1; Minnesota v. First National Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774; Iowa-Des Moines Nat. Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265; Georgetown Nat. Bank v. McFarland, 273 U. S. 568, 47 S. Ct. 467, 71 L. Ed. 779.

We are brought, therefore, face to face with this proposition: When, by our system of laws, state and federal, shares of national banks are taken without the body of taxable property on an ad valorem basis, are the shares of state banks still taxable on such basis?

The case of State Bank v. Board of Revenue, supra, answers this question in the negative. The great jurist who wrote that opinion, with his associates, as appears from decisions above reviewed, had considered these questions for many years.

Following that decision, our tax structure was so remodeled that for thirty years shares of stock in both state and national banks were effectively taxed, and, along with the shares in other corporations, contributed to the maintenance of the government whose benefits they shared. The basis of the decision was the application of the uniformity clauses of our own Constitution.

While recognizing the rule often declared that these provisions do not require that all property be taxed, do not inhibit exemptions, nor the selection of the subjects of taxations within the bounds declared, still two definite and unequivocal announcements are made as governing the taxation of the shares of state and national banks, viz.: (1) "If a tax is imposed on any species of property, all property belonging to that species must be taxed at the

---

[1] Ante, p. 10.

same rate." (2) "Bank shares in a National bank and bank shares in a State bank, belong to one species of moneyed capital. Any attempt to draw a distinction between them, as subjects of taxation, would be futile."

It is suggested the case then being considered involved a statute taxing shares in state banks and shares in national banks on a different basis of value; that the exclusion of national bank shares under our present laws is due to the federal law, and the state is still free to tax the shares in banking corporations of its own creation. In last analysis this contention means no more than that shares in state banks and in national banks are not of the same class or species of property within the meaning of our Constitution. This, in direct contradiction to the decision we are considering. If the state of the federal law constitutes the one a different class, the court would have then said state banks have no concern with the taxation of national banks, the shares of the latter may be wholly exempt, and hence the imposition of a lesser tax is a matter of which state banks cannot complain.

Certainly "all property" of the same species cannot be taxed at the same rate, if a portion of such species is taxed on an ad valorem basis and the other is not taxed at all. Exemption and selection cannot strike down entirely the uniformity provisions of our Constitution.

It cannot be assumed that Chief Justice Stone did not take account of the fact that the restrictions upon the taxation of national bank shares were imposed by the federal statute. He expressly refers to section 5219, in force then as now, as enabling in character. While this is well recognized, still in fact, and as Judge Stone evidently viewed it, the federal law recognizes shares in national banks as the rightful subject of state taxation.

They are private property enjoying all the benefits of state government as other property having a tax situs in the state. Of right, they should share in the support of that government. Congress, in recognition of this fact, says: "Nothing in this act" shall prevent such taxation, but it must be done without tax discrimination in favor of other moneyed capital. It is such discrimination, as construed by federal decisions, which has excluded shares in national banks from the body of taxable property in the state. True, our Legislature has manifested no purpose to tax shares in state banks and exempt shares in national banks. The statute purports to put them on the same footing, but the failure to tax other moneyed capital at the same rate, that is to say, impose a tax in some form substantially equal in the sense of the burden imposed, having regard to all the incidents and conditions which may rightfully enter into a scheme of taxation, has worked a release of national bank shares from ad valorem taxes.

We do not hesitate to say there is no semblance of justice in taxing the shares of state banks and excluding those of national banks. Such status is calculated to bring on a form of antagonism and rivalry between the two systems which may work injury to both.

We see no good reason to depart from the clearly expressed views of Judge Stone that both must be taxed alike or neither can be. Sections 211 and 217 of our Constitution, aimed at equality and justice in taxation, are to little effect, if one be taxed on an ad valorem basis and the other wholly relieved. This holding is fortified by similar holdings in other states where the like question has arisen. Voran v. Wright, 129 Kan. 601, 284 P. 807; Central National Bank v. Sutherland, 113 Neb. 126, 202 N. W. 428; Commercial State Bank v. Wilson, 53 S. D. 82, 220 N. W. 152; Security Savings Bank v. Board of Review, 189 Iowa, 463, 178 N. W. 562.

The principle that, where one species of property is taxed, all property of that species must be taxed, and taxed at the same rate, is recognized by many decisions of our court. Western Union Telegraph Co. v. State Board of Assessment, 80 Ala. 280, 60 Am. Rep. 99; Hooper v. State, 141 Ala. 111, 37 So. 662; State v. Alabama Fuel & Iron Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752.

Strong insistence is made that such a rule puts the state in leading strings, subjects it to federal power in shaping its own tax structure. Appellant relies upon our line of cases recognizing the right of the state to make classification for purposes of excise taxation, and to make exemptions and selections in matter of ad valorem taxes; calls attention to our tax upon the registration of mortgages and exemption of such loans from ad valorem taxes, treated in State v. Alabama Fuel & Iron Co., supra; calls attention also to exemption of foreign securities upon payment of a recording tax, upheld in Lee v. State Tax Commission, 219 Ala. 513, 123 So. 6.

The power of Congress to impose such restriction as may be deemed proper to prevent tax discrimination against shares in national banks is undoubted.

While our government is dual in character, consisting of federal laws and state laws, within the scope of their respective powers, it is one government. The federal law is the law of Alabama, just as the acts of its Legislature. As for section 5219 of Revised Statutes, the situation is not materially different from like provisions inserted in our own Constitution.

The insistence that the state's rightful power to shape its own taxing policies should be zealously guarded is of real moment.

The co-operation of the Congress to that end is but to recognize the genius of our institutions. In general it may be said the decisions of the United States Supreme Court, in recognition of this vital interest of the states, construe their tax laws liberally when assailed as invasive of some provision of the Federal Constitution. See review of authorities in our recent case, State v. Anglo-Chilean Nitrate Sales Corporation, ante, p. 141, 142 So. 87; also Ohio Oil Co. v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775.

If section 5219, as now amended and as construed by the United States Supreme Court, is not properly framed in this regard, the remedy lies with Congress. As clearly shown in State Bank v. Board of Revenue, supra, the right of state banks to have their shares placed in the same class or species as the shares of national banks is by force of our own Constitution aimed at the same general principle of equality in tax burden as is the federal statute.

·Our state tax laws have in the main exempted moneyed capital, and shares of corporations operating on moneyed capital, from ad valorem taxation. That this class of property should bear its due share of the burdens of taxation would not seem to be matter of debate.

What is its due share, all things considered, and the manner of its imposition, are legislative problems.

Whatever aid we may render by a pertinent discussion of the principles involved, we conceive it our duty to give.

Assuming, then, that the legislative policy of retaining the shares of both state banks and national banks as taxable property on an ad valorem basis in Alabama is to be adhered to, we here set out, for easy reference, section 5219 of Revised Statutes, as now amended by Acts of 1923 and 1926 (United States Statutes at Large, part 2, vol. 44, page 223 [12 USCA § 548]), as follows:

Sec. 5219. "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessd upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.

"(c) In case of a tax on or according to or measured by the net income of an association, the taxing State may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits: Provided, however, That a State which imposes a tax on or according to or measured by the net income of, or a franchise or excise tax on, financial, mercantile, manufacturing, and business corporations organized under its own laws or laws of other States and also imposes a tax upon the income of individuals, may include in such individual income dividends from national banking associations located within the State on condition that it also includes dividends from domestic corporations and may likewise include dividends from national banking associations located without the State on condition that it also includes dividends from foreign corporations, but at no higher rate than is imposed on dividends from such other corporations.

"(d) In case the dividends derived from the said shares are taxed, the tax shall not be at a greater rate than is assessed upon the net income from other moneyed capital.

"(2) The shares of any national banking association owned by nonresidents of any State, shall be taxed by the taxing district or by the State where the association is located and not elsewhere; and such association shall make return of such shares and pay the tax thereon as agent of such nonresident shareholders.

"3. Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed.

"4. The provisions of section 5219 of the Revised Statutes of the United States as in force prior to March 25, 1926, shall not prevent the legalizing, ratifying, or confirming by the States of any tax heretofore paid, levied, or assessed upon the shares of national banks, or the collecting thereof, to the extent

that such tax would be valid under said section."

Since this court has held income to be property within the uniformity provisions of our Constitution, a tax on income except on an ad valorem basis at the same rate as other property would call for an amendment to our State Constitution.

To meet the conditions of the federal statute as to taxing shares of national banks, on an ad valorem basis, a like tax on the shares of corporations engaged in a competitive loan and investment business is fully recognized by decision as well as indicated by the statute.

But this' method of taxing moneyed capital of the individual employed in competition with national banks, or where the loan and investment business of a corporation is incidental to and in connection with another main business, may not be desirable nor just.

In this connection, we observe that the equality called for in the federal statute does not require that every loan or investment of moneyed capital be taxed on an ad valorem basis. The federal decisions draw a definite distinction between the capital and loans of a national bank and the shares of its capital stock. The value of the shares depends normally on the results of the business as a whole, the dividend or income it yields.

'There would seem to be a reasonable workable relation between net income and the value of the property yielding the income that would afford a basis for taxation at substantially the same rate in the sense of burden imposed.

This court has in many well-known decisions recognized in principle the legislative power to impose excise or privilege taxes on the basis of the value of such privilege, as measured by the volume or income from the business.

We see no reason, therefore, why a system of taxing moneyed capital may not be worked out on these lines, conforming to all the requirements of federal law and our State Constitution in the matter of substantial equality. Surely there is crying need for a solution of these matters.

As matters now stand, we must hold the shares in appellee state bank not subject to ad valorem taxation. This conclusion is based solely on the exclusion of shares of national banks by discrimination in favor of other moneyed capital in disregard of the restrictions of the federal law.

ANDERSON, C. J., and FOSTER, J., concur in the foregoing dissent.

