155 So. 305

## TITLE GUARANTEE LOAN & TRUST CO.
### v. STATE.
### 3 Div. 102.

Supreme Court of Alabama.
May 24, 1934.

Smyer, Smyer & Bainbridge, of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

BOULDIN, Justice (after stating the facts as above).

The constitutionality of the statute (Gen. Acts 1932, Ex. Sess., p. 107) is questioned upon the ground that the tax therein levied is actually an income tax; that income is property, and the tax imposed is in excess of the ad valorem tax rate limited by section 214 of the Constitution. Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A. L. R. 300.

The act specifically defines the tax levied to be "an excise tax for the privilege of engaging in this State in the business of banking and of conducting a financial institution, as in this Act defined, and of conducting a business employing moneyed capital coming into competition with the business of national banks measured by its net income for such taxable year at the rate of five per cent. of such net income." Section 3. The same intent is expressed in the title and throughout the body of the act.

Our decisions have long recognized the distinction between a direct property tax and a tax on the privilege of doing business in which such property is employed.

Among many cases we cite, as illustrative, the cases of Smith v. Court of County Commissioners, 117 Ala. 196, 23 So. 141; Windham v. State, 16 Ala. App. 383, 77 So. 963 (Id., 202 Ala. 697, 79 So. 877); Mills v. Court of Com'rs of Conecuh County, 204 Ala. 40, 42, 85 So. 564.

In fixing the measure of the excise tax the Legislature may, and should, have regard to the value of the privilege to the taxpayer. The gross income from the business has been recognized for a third of a century as a legitimate basis for measuring the amount of the tax. Goldsmith v. Mayor & Aldermen of Huntsville, 120 Ala. 182, 24 So. 509.

Our entire tax structure abounds in excise taxes laid on a similar basis.

Obviously the net income from a business may be a far more equitable basis for measuring the tax than the gross income or volume of business. That the statute has provisions for ascertaining net income, such as deductions, exemptions, and credits, analogous to provisions of income tax laws, cannot affect the essential nature of the tax as one levied upon the privilege of doing a defined business.

Appellant relies upon Macallen Company v. Commonwealth of Massachusetts, 279 U. S. 620, 49 S. Ct. 432, 73 L. Ed. 874, 65 A. L. R. 866.

Suffice to say that the later cases of Educational Films Corporation of America v. Ward, Attorney General, etc., 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226, and Pacific Co., Limited v. Johnson, State Treasurer, etc., 285 U. S. 480, 52 S. Ct. 424, 76 L. Ed. 893, in principle, fully recognize the validity of excise taxes of this character. Those cases were complicated by the fact that government instrumentalities were involved, and the net income included that derived from tax exempt securities. Such income is excluded under our act.

We think, upon the authority of those cases, and others there cited, national banks are subject to the excise tax here involved.

We adhere to our announcement in the late case of Union Bank & Trust Co. v. S. H. Blan, Individually, etc., 155 So. 612, saying: " * * * the major purpose of the act was to levy an excise tax for the privilege of engaging in the business of banking in the State of Alabama, and of conducting a financial business employing moneyed capital coming into competition with the business of national banks, so that national banks as well as state banks would be amenable to the law."

The act is not subject to the constitutional objection interposed.

The second inquiry presented is whether this appellant is within the class subject to the payment of the excise tax.

As noted in our recent cases of Union Bank & Trust Co. v. S. H. Blan, Individually, etc., supra, and Union Bank & Trust Company v. R. C. Phelps, Individually, etc. (Ala. Sup.) 153 So. 644,[1] the statute grew out of and was intended to remedy a situation disclosed in Phelps v. Union Bank & Trust Co., 225 Ala. 238, 142 So. 552, and Ward, Tax Collector, v. First Nat. Bank of Hartford, 225 Ala. 10, 142 So. 93, 95.

By the tax structure of this state, exempting shares of stock in certain financial corporations from ad valorem taxation, and exempting moneyed capital employed in competition with national banks, from any form of taxation substantially equal in tax burden to the tax imposed on shares of national banks, the state had lost the power to tax shares in national banks because of discrimination forbidden by section 5219, Rev. St. U. S., as amended (12 USCA § 548), set out in full in

Phelps v. Union Bank & Trust Co., 225 Ala. 238, 246, 142 So. 552. Special inequality and injustice resulted to state banks, whose shares still remained subject to ad valorem taxation.

The aim of the statute here involved was to remedy this inequality, to enact a tax system that would include national banks, and to that end include financial institutions as defined in the act.

Employing "moneyed capital" so as to come into "competition with the business of national banks" had been fully considered and defined in Ward, Tax Collector, v. First Nat. Bank of Hartford, supra, wherein the decisions of the Supreme Court of the United States were reviewed at length. It can scarcely be questioned that the Legislature had this case in mind in enacting the excise tax law now for construction.

Without going into details, we are of opinion, and so hold, that the appellant, as disclosed by the statement of facts, was engaged in a business employing moneyed capital in substantial competition with the loan and investment features of the business of national banks.

It is not necessary that it appear this business actually came into competition with any particular national bank, as in cases where a bank is seeking immunity because of undue discrimination under the provisions of section 5219, Rev. St. U. S. The aim is to prevent such cases from recurring, and to that end financial institutions are included whose business is of that character which comes into competition with that of national banks.

Appellant suggests that its charter powers include other lines of business than the loan and trust business, and its chief business is the title guaranty business.

We are not unmindful of the fact that a corporation subject to this excise tax is exempt from ad valorem tax on its shares, provided it makes the return required by the act.

In the administration of the several statutes some difficulty may arise as to whether a corporation should be listed under one or the other class. But this issue is not presented by the record before us.

Finally, appellant insists that after computing the net income and the tax thereon, credits should be allowed for tax paid on personal property, for franchise tax paid, and the fee paid for permit to do a corporate business. This involves a construction of a provision in section 6 of the act, which reads:

---

[1] Ante, p. 236.

"If any other tax whether on property (other than ad valorem taxes on real estate), income, business or any element thereof, except license taxes not in excess of those heretofore legally levied and in effect, be levied by this State or by any political subdivision of this State on any financial institution as in this Act defined, the amount of such other tax due by such institution shall be credited on account of the tax payable pursuant to the provisions of this Act." Gen. Acts Ex. Sess. 1932, pp. 107, 112.

This provision must be considered in connection with section 1 of the act, listing deductions to be made in ascertaining the net income on which the tax is figured. Among these deductions is: "(3) *Taxes.*—Taxes paid or accrued within the taxable year except First: The excise tax imposed by this Act; Second: Taxes assessed against local benefits of a kind tending to increase the value of the property assessed, but this subparagraph shall not exclude the allowance as a deduction of so much of such taxes as is properly allocable to maintenance or interest charges." Gen. Acts Ex. Sess. 1932, pp. 107, 108, 109.

Taxes are here used in an inclusive sense. The exceptions specified are presumed to be the only taxes not deducted.

Listing taxes as deductions in finding net income, not as credits on the tax after it is computed, is in keeping with similar statutes generally.

While the above provision of section 6 is not as clear as it might be, it seems to be directed to future legislation levying further tax burdens. If, after the passage of this act, any other tax be levied except license taxes not in excess of those heretofore levied (now being paid), this excise tax shall be automatically lowered to the extent of such further tax. This view is strengthened by section 6 of the amended statute (Gen. Acts 1933, Ex. Sess., p. 109), which seems intended to clarify the former section. Levy of a tax is legislative.

"License tax," as here used, would seem to include a franchise tax. "The tax (franchise tax) thus exacted of domestic corporations is primarily a license tax for the continued exercise of their corporate franchises. Southern Ry. Co. v. Greene, Probate Judge, 160 Ala. 396, 49 So. 404." Kansas City, M. & B. R. R. Co. v. Stiles, Judge, 182 Ala. 138, 62 So. 734, 735.

The tax or fee for annual permit is of like class.

We are of opinion the trial court properly denied these credits. Union Bank & Trust Company v. S. H. Blan, Individually, etc., supra.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

