## CHEROKEE STATE BANK OF ST. PAUL AND ANOTHER v. GEORGE E. WALLACE AND OTHERS.[1]

May 6, 1938.

No. 31,522.

[1]Reported in 279 N. W. 410.

*Sterling & Purcell* and *Roger M. Emmons,* for appellants.

*William S. Ervin,* Attorney General, *John A. Pearson,* Assistant Attorney General, *Michael F. Kinkead,* County Attorney, and *Andrew R. Bratter,* Assistant County Attorney, for respondents.

JULIUS J. OLSON, JUSTICE.

This is a suit under our declaratory judgments act to determine the validity of the tax on shares of stock of state banks authorized by L. 1925, c. 304, 1 Mason Minn. St. 1927, §§ 2026-1 to 2026-4, inclusive. The facts were stipulated. Findings and conclusions of law were made sustaining the act "as applied to" the bank, its coplaintiff, a shareholder therein, and "other shareholders similarly situated"; also that the shares of stock so assessed were subject to

the tax imposed thereunder on May 1, 1937, and "each year thereafter * * * will be subject to taxation" under the act "unless the legislature * * * otherwise provides." Plaintiffs appeal from the resulting judgment.

Cherokee State Bank is a domestic corporation organized and functioning as a state bank in St. Paul. Plaintiff Koch is one of its stockholders. The defendants are members of the tax commission and the taxing officers of Ramsey county.

Section 1 of the act (1 Mason Minn. St. 1927, § 2026-1) provides:

"The stock of every bank and mortgage loan company in this state, organized under the laws of this state or of the United States, shall be assessed and taxed in the town, city or village where such bank or mortgage loan company is located, whether the stockholders of such bank reside in such place or not, and shall be assessed in the name of the bank or mortgage loan company. * * * To aid the assessor in determining the value of such shares of stock, the accounting officer of every such bank or mortgage loan company shall furnish to the assessor a sworn statement showing the amount and number of the shares of the capital stock, the amount of its surplus, undivided profits and all other funds, and the amount of its legally authorized investments in real estate located in this state, which real estate shall be assessed and taxed as other real estate. The assessor shall deduct the amount of such legally authorized investments in real estate from the aggregate amount of such capital, surplus, undivided profits, and other funds, and the remainder shall be taken as a basis for the valuation of such shares in the hands of the stockholders, and shall be assessed at thirty-three and one-third (33 1/3) per cent of its true and full value."

In conformity with the quoted section, the bank filed, as of May 1, 1936, the verified statement thereby required. This showed a balance of nearly $30,000 subject to tax, appropriate deductions having been made because of real estate owned in this state. This balance was then assessed as personal property at 33 1/3 per cent of its actual value. Later, after the commencement of this action, and in accordance with a compromise entered into by virtue of authority

granted by L. 1935, c. 131, the tax was paid. Under the last mentioned law the tax commission was authorized "to enter into agreements of settlement with any state or national bank, which, acting in behalf of its shareholders, offers to settle and compromise taxes by paying 75% of such taxes as shall be assessed against the shareholders as of May 1st, 1935, and as of May 1st, 1936." It further appears that during the pendency of this suit the bank entered into a like compromise for the payment of the 1937 and 1938 taxes. This was done pursuant to the authority granted by Ex. Sess. L. 1937, c. 65, a reënactment of the 1935 law. So, as a practical matter, the issue appears to be limited to the validity of tax assessments to be made for the year 1939 and thereafter.

Plaintiffs attack the tax upon the theory that the law under which it is levied and assessed violates the equal protection clause of the fourteenth amendment of the federal constitution and the uniformity clause, art. 9, § 1, of our own. Their claim goes forth substantially as follows: That the 1925 act by its terms includes both state and national banks; that by reason of R. S. § 5219, as amended by act of March 4, 1923, 42 St. c. 267, national bank shares cannot be taxed "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks." In Minnesota v. First Nat. Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. ed. 774, affirming 164 Minn. 235, 204 N. W. 874, 205 N. W. 375, it was held that L. 1921, c. 416, was violative of the mentioned federal statute (§ 5219) insofar as the same was applicable to national bank shares. Under that section such tax is violated "wherever capital, substantial in amount when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business." First Nat. Bank v. City of Hartford, 273 U. S. 548, 558, 47 S. Ct. 462, 465, 71 L. ed. 767, 773, 59 A. L. R. 1. Obviously, then, in order to constitute such violation, it must be made to appear as a matter of fact that: (1) The amount of capital employed in business or by private investors is substantial; (2) that such comes

into competition with the business of national banks, *i. e.*, used in similar transactions in which national banks are engaged and in the same locality; and (3) that the tax imposed upon such competing capital is at a lower rate than that applied to shares of national banks with which there is competition.

■ Plaintiffs' argument in substance is this: L. 1925, c. 304, is invalid insofar as its application to shares of stock of national banks is concerned, therefore it is likewise void when applied to shares of state banks because violative of the named constitutional provisions. They then proceed upon the theory that the discrimination against taxing shares of national banks appears on the face of our statute and is one of law. We cannot, in view of what is clearly otherwise under the decided cases, agree therewith. The discrimination must be shown to exist in fact. Moneyed capital in this state is subject to taxation under two laws, the mortgage registry tax law (1 Mason Minn. St. 1927, §§ 2322-2324) and the money and credits law (*Id.* §§ 2337-2349). The former but not the latter is applicable to national bank shares. The three-mill rate provided for by the money and credits law on the full value thereof is not on its face less than the tax that might be levied at any time on shares of bank stock. Even if it be accepted that moneyed capital employed by individuals or in business is substantial and in competition with every phase of the business of the national banks, yet the varying rate of taxation in a given year as applied to the assessed valuation of shares in a given tax district may or may not result in their taxation at a greater rate than the moneyed capital in competition therewith. Each time the issue is raised its determination must be governed by a factual analysis.

The only showing made by plaintiffs is found in stipulation No. 14, which is:

"That there is in the county of Ramsey other monied capital in the hands of individual citizens of this state invested in mortgages, bonds and other securities which is taxed as moneys and credits."

That is far from a sufficient factual showing; but we do not choose to make this the basis of our decision. It is enough for the present simply to call attention thereto.

■ Plaintiffs' main reliance is upon the stand that since the tax is inapplicable to national bank shares it is also void as to state bank shares because taxation of the latter and not the former amounts to an arbitrary classification and hence a void one.

Art. 9, § 1, of our constitution provides that "Taxes shall be uniform upon the same class of subjects * * *" We have construed that clause as being no more restrictive than the equal protection clause of the fourteenth amendment and hence equal in scope therewith. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102. It is elementary that each prohibits only arbitrary, but allows reasonable, classification for tax purposes. Does the state's attempt to tax state bank shares, in view of the 1925 act and assuming its invalidity as applied to national bank shares, amount to an arbitrary classification? We are convinced that a negative answer is permissible, if not compelled, by decision in Union Bank & Trust Co. v. Phelps, 288 U. S. 181, 53 S. Ct. 321, 77 L. ed. 687, 83 A. L. R. 1438, affirming 225 Ala. 238, 142 So. 552. There the plaintiff, a state bank, seeking to recover taxes paid, advanced the same argument as do plaintiffs here, i. e., shares of state and national banks belong to the same species of property; they are similar and have for years been put in the same category by the laws of the state; that under the scheme of taxation existing in the state the latter escape assessment while the former are subject thereto; that as a consequence the shares of state banks are deprived of the equal protection of the laws guaranteed by the fourteenth amendment and the uniformity clause of the state constitution. The applicable sections of the Alabama constitution are:

"§ 211. All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, * * *"

"§ 217. The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; * * *"

The Alabama court (225 Ala. 238, 142 So. 552) held the state constitution was not violated, and the same result was reached by the Supreme Court with reference to the equal protection clause. Since our uniformity clause is of the same scope as the latter, we need not parallel it with the former.

In denying the claim of violation of the equal protection clause, the court said (288 U. S. 181, 186-188, 53 S. Ct. 321, 322, 77 L. ed. 687, 690, 83 A. L. R. 1438) :

"Counsel for petitioner stoutly maintain: Shares of State and National banks belong to the same species of property. Not only are they essentially similar, but for many years the Revenue Statutes of Alabama have put them in the same category. Under the scheme of taxation presently existing in the State, National bank shares escape assessment while shares of State banks are subject thereto. Consequently, the latter are deprived of the equal protection of the laws guaranteed by the XIV Amendment.

"A sufficient answer is that within the intendment of the XIV Amendment shares of National and State banks are not essentially the same when considered in connection with taxation. Nor do they become so merely because the State has attempted to subject them to like treatment.

"The several States lack power to tax National bank shares except as expressly permitted by Congress. [Citing cases.] This is enough to negative the idea that shares of National and State banks are essentially the same for purposes of taxation. And the Alabama Supreme Court has held that under her Constitution, although the legislature may have included them in the same class of taxable objects, there is permissible distinction between them.

"To accept the doctrine that as the states can only tax a federal instrumentality when permitted by Congress, therefore they cannot tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the XIV Amendment would be both illogical and destructive of their proper independence.

"Such instrumentalities are exempted from State taxation without the express consent of Congress, by the Federal Constitution. They are of a class wholly distinct from the property of ordinary corporations or individuals, and this fact cannot be disregarded by the State. If the State sees fit to tax unrestricted property within her jurisdiction and to omit National Bank shares, the classification cannot be said to be arbitrary and wholly unreasonable—the basis of it is plain enough. It may be vastly more important for the State to omit National Bank shares and tax ordinary moneyed capital according to a plan not permissible in respect of National Bank shares rather than conform to the standard prescribed by Congress. * * * This view would subject the taxing power of the State to the will of Congress far beyond what is necessary for the protection of federal agencies. The constitutional inhibition against taxing these agencies does not abridge the taxing power of the several States in respect of other property. The implied exemption is a shield for federal agencies—not the source of congressional power to control State action in respect of other matters."

The logic and justice served by the quoted language of our highest court should afford an adequate reason for adopting and applying it to the facts before us. It answers to the point of demonstration the strongest features presented by plaintiffs' arguments. We shall make but one more observation concerning their claims. In their reply brief they urge that the basis for the court's holding in the Phelps case "was that shares of state and national banks, as such, are not essentially the same species of property for purposes of taxation." They say the present case is distinguishable from the situation there presented because "the legislature of Minnesota has expressly placed state and national bank shares in the same class for taxation purposes and has not manifested any other or different intent than that they be treated alike." We think there is ample room for a distinction. The court in the Phelps case, to repeat, not only said that [288 U. S. 186] "shares of National and State banks are not essentially the same," but significantly added, *"Nor do they*

*become so merely because the State has attempted to subject them to like treatment."* (Italics supplied.) That language, we feel, is a conclusive refutation of plaintiffs' so-called distinguishing argument.

■ The power of taxation is inherent in sovereignty and under our system of government reposes with the legislature, with only such limitations as are fixed by our state and national constitutions. To be remembered also, the state constitutional provisions are not a grant of power but rather and only a limitation thereon. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102. But as to the power to tax the stock in national banks, these being agencies of the national government, no such power resides in the state. It must necessarily in the exercise of this power be limited to and conform with the restrictions fixed by congressional legislation. Hence the state may not go beyond the power so granted as that would necessarily bring about nothing but abortive and void results. State v. First Nat. Bank, 164 Minn. 235, 204 N. W. 874, 205 N. W. 375, affirmed 273 U. S. 561, 47 S. Ct. 468, 71 L. ed. 774. Obviously, then, our legislature could go no further than as permitted by R. S. § 5219. But we think it must be equally clear that limitation of power to tax shares in national banks does not limit, much less deprive, the state of its constitutional power to tax corporations of its own creation. We must recognize the fact that legislative power to select proper subjects of taxation and to classify them rests within state jurisdiction. Congress, having plenary authority respecting national banks, could from time to time change the law in fixing the limits to which these instrumentalities of the government might be locally taxed, or not taxed at all. This, however, does not detract from the right of the state to provide for a system of taxation as to its own citizens, whether individual or corporate.

"Upon the question of taxation, the Legislature of this state had the power to make exemptions and classifications free from interference by the courts unless there results inequality, not only oppressive in its operation, but so glaring as that it can be judicially declared to be founded on arbitrary and capricious principles, with-

out the just semblance of reason. Subject to this limitation, the legislative power to select proper subjects of taxation and to classify them upon principles which to them seem just cannot be circumscribed by the courts. There must be, of necessity, left a liberal scope for the free exercise of this presumably wise discretion." Phelps v. Union Bank & Trust Co. 225 Ala. 238, 240, 142 So. 552, 553.

"The power to classify is primarily with the legislature, and its laws should not be declared invalid unless it clearly appears that they transgress the constitution. * * * The classification must not be unreasonable, arbitrary, or, as is sometimes said, capricious. It must rest on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. * * * It must operate 'equally and uniformly upon all persons in similar circumstances.' * * * Any classification is permissible which has a reasonable relation to some permitted end of governmental action." Reed v. Bjornson, 191 Minn. 254, 264-265, 253 N. W. 102, 107.

Upon principle and authority, we hold the act here involved and the tax imposed thereunder not to be violative of art. 9, § 1, of our constitution nor of the equal protection clause of the fourteenth amendment to the federal constitution.

The judgment is affirmed.

MR. JUSTICE PETERSON, having been of counsel as attorney general when this case was commenced, took no part in its consideration or decision.